## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
### Miami Division

### Case No. 1:21cv22232

MARIA ZAPATERO, Individually and on
Behalf of All Others Similarly Situated,

            Plaintiff,

vs.


ENERGIZER HOLDINGS, INC.,
EDGEWELL PERSONAL CARE
COMPANY, EDGEWELL PERSONAL
CARE BRANDS, LLC, EDGEWELL
PERSONAL CARE, LLC, PLAYTEX
PRODUCTS, INC., SUN
PHARMACEUTICALS, LLC;

        Defendants.

## CLASS ACTION COMPLAINT

Plaintiff, Maria Zapatero ("Plaintiff"), individually and on behalf of all others similarly situated throughout the State of California, files this Class Action Complaint ("CAC") against Defendants Energizer Holdings, Inc., Edgewell Personal Care Company, Edgewell Personal Care Brands, LLC, Edgewell Personal Care, LLC, Playtex Products, Inc., and Sun Pharmaceuticals, LLC (collectively, "Defendants"), and in support states the following:

## NATURE OF THE ACTION

1.      This is a class action lawsuit by Plaintiff, and others similarly situated, who purchased Banana Boat sunscreen products manufactured, marketed, sold and/or distributed by Defendants. Defendants distribute, market and sell several over-the-counter sunscreen products under their brand name "Banana Boat." Several of Defendants' Banana Boat sunscreen products have been independently tested and shown to be adulterated with benzene, a known human

carcinogen. The presence of benzene in Defendants' Banana Boat sunscreen products was not disclosed in the products' label, in violation of state and federal law. Plaintiff and the putative class suffered economic damages due to Defendants' misconduct (as set forth below) and they seek injunctive relief and restitution for the full purchase price of the sunscreen product(s) they purchased. Plaintiff alleges the following based upon personal knowledge as well as investigation by counsel, and as to all other matters, upon information and belief. Plaintiff further believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## JURISDICTION AND VENUE

2.      This Court has original jurisdiction over all causes of action asserted herein under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2), because the matter in controversy exceeds the sum or value of $5,000,000 exclusive of interest and costs and is a class action in which there are more than 100 class members and many members of the class are citizens of a state different than Defendants.

3.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391, because Plaintiff suffered injury as a result of Defendants' acts in this district, many of the acts and transactions giving rise to this action occurred in this district, Defendants conduct substantial business in this district, Defendants have intentionally availed themselves of the laws and markets of this district, and Defendants are subject to personal jurisdiction in this district.

## THE PARTIES

4.      Plaintiff Maria Zapatero resides in Miami, Florida, and at all times relevant hereto has been a resident of Miami-Dade County. Approximately 2019, Plaintiff purchased Banana Boat brand sunscreen products, from Walgreens, located at 16795 S. Dixie Hwy., Miami, Florida

33157. During this time, Plaintiff was unaware that Defendants' sunscreen products may be adulterated with benzene. Plaintiff purchased the Defendants' sunscreen products on the assumption that the labeling of these products was accurate and that the products were unadulterated, safe and effective. Plaintiff would not have purchased Defendants' sunscreen products had she known there was a risk the products may contain benzene, a known human carcinogen. As a result, Plaintiff suffered injury in fact when she spent money to purchase sunscreen products she would not otherwise have purchased absent Defendants' misconduct, as alleged herein.

5.      Defendant Energizer Holdings, Inc. ("Energizer") is a Missouri corporation, having a principal place of business at 533 Maryville University Drive, St. Louis, Missouri 63141. Energizer manufactures, distributes, markets and/or sells sun care products under the Banana Boat brand to consumers nationwide, including California. Energizer may be served via its registered agent at: C T Corporation System, at 120 S. Central Ave., Clayton, MO 63015.

6.      Edgewell Personal Care Company is a foreign business corporation with its principal place of business in Chesterfield, Missouri. Edgewell Personal Care Company is licensed to and does business throughout the United States, including California. Edgewell Personal Care Company manufactures, distributes, markets and/or sells personal care products, including Banana Boat sunscreen products, to consumers nationwide, including California. Edgewell Personal Care Company may be served via its registered agent at: Corporate Creations Network, Inc., 12747 Olive Blvd., #300, St. Louis, MO 63141.

7.      Edgewell Personal Care Brands, LLC is a limited liability company organized under the laws of the State of Delaware with its principal place of business in Shelton, Connecticut. Edgewell Personal Care Brands, LLC is a wholly-owned subsidiary of Edgewell

Personal Care Company. Edgewell Personal Care Brands, LLC manufactures, distributes, markets and/or sells personal care products, including Banana Boat sunscreen products, to consumers nationwide, including California. Edgewell Personal Care Brands, LLC may be served via its registered agent at: Corporate Creations Network, Inc., 12747 Olive Blvd., #300, St. Louis, MO 63141.

8.      Edgewell Personal Care, LLC is a limited liability company organized under the laws of the State of Delaware with its principal place of business in Shelton, Connecticut. Edgewell Personal Care, LLC is a wholly-owned subsidiary of Edgewell Personal Care Company. Edgewell Personal Care, LLC manufactures, distributes, markets and/or sells personal care products, including Banana Boat sunscreen products, to consumers nationwide, including California. Edgewell Personal Care, LLC may be served via its registered agent at: Corporate Creations Network, Inc., 12747 Olive Blvd., #300, St. Louis, MO 63141.

9.      At all relevant times, each and every "Edgewell" Defendant was acting as an agent and/or employee of each of the other "Edgewell" Defendants with respect to the manufacturing, marketing, selling and/or distributing of Banana Boat sunscreen products, and was the owner, agent, servant, joint-venturer and employee, each of the other and each was acting within the course and scope of its ownership, agency, service, joint venture and employment with the full knowledge and consent of each of the other "Edgewell" Defendants. On information and belief, each of the acts and/or omissions complained of herein were made known to, and ratified by, each of the other "Edgewell" Defendants. All three "Edgewell" Defendants will be referred to collectively, hereinafter, as "Edgewell."

10.     Playtex Products, LLC is a limited liability company organized under the laws of the State of Delaware with its principal place of business in Shelton, Connecticut. Playtex

Products, LLC is a wholly-owned subsidiary of Edgewell Personal Care Company. Playtex Products, LLC manufactures, distributes, markets and/or sells Banana Boat sunscreen products as one of its brands to consumers nationwide, including California. Playtex Products, LLC may be served via its registered agent at: Corporate Creations Network, Inc., 3411 Silverside Road, Tatnall Building, Ste., 104, Wilmington, DE 19810.

11. Sun Pharmaceuticals, LLC ("Sun Pharmaceuticals") is a limited liability company organized under the laws of Delaware with its principal place of business in Shelton, Connecticut. Sun Pharmaceuticals is a wholly-owned subsidiary of Edgewell Personal Care Company. Sun Pharmaceuticals manufactures, distributes, markets and/or sells personal care products, including Banana Boat sunscreen products, to consumers nationwide, including California. Sun Pharmaceuticals may be served via its registered agent at: Corporate Creations Network, Inc., 3411 Silverside Road, Tatnall Building, Ste., 104, Wilmington, DE 19810.

## **INTRODUCTION**

12. Defendants manufacture, market, advertise, label, distribute, and/or sell a variety of Banana Boat sunscreen spray/aerosol products and lotions, including:

| 1 | Banana Boat | Spray | Deep Tanning Dry Oil Clear Sunscreen Spray SPF 4 |
|---|---|---|---|
| 2 | Banana Boat | Spray | Kids Max Protect & Play Sunscreen C-Spray SPF 100 |
| 3 | Banana Boat | Lotion | Kids Mineral Based Sunscreen Lotion SPF 50+ |
| 4 | Banana Boat | Spray | Kids Sport Sunscreen Lotion Spray SPF 50 |
| 5 | Banana Boat | Spray | Protective Dry Oil Clear Sunscreen Spray with Coconut Oil FPS 15 |
| 6 | Banana Boat | Spray | Simply Protect Kids Sunscreen Spray SPF 50+ |
| 7 | Banana Boat | Spray | Simply Protect Sensitive Mineral Enriched Sunscreen Lotion Spray SPF 50 |
| 8 | Banana Boat | Spray | Ultra Defense Ultra Mist Clear Sunscreen Spray SPF 100 |

| 9 | Banana Boat | Spray | Ultra Sport Clear Sunscreen Spray SPF 100 |
|---|---|---|---|
| 10 | Banana Boat | Lotion | Ultra Sport Sunscreen Lotion SPF 100 |
| 11 | Banana Boat | Spray | Ultra Sport Clear Sunscreen Spray SPF 30 |
| 12 | Banana Boat | Spray | Ultra Sport Clear Sunscreen Spray SPF 50 (hereafter collectively referred to as "Sunscreen Products").[1] |

13.     In 2020, Valisure LLC and ValisureRX LLC ("Valisure"), an analytical pharmacy, ran tests on a variety of Defendants' Sunscreen Products. Specifically, Valisure tested numerous lots of Defendants' spray and lotion Sunscreen Products. Through its testing, Valisure discovered that certain of the Sunscreen Products contain benzene, with values ranging from less than 0.1 parts per million ("ppm"), 0.10 ppm to 2 ppm, and more than 2 ppm. For reference, the National Institute for Occupational Safety and Health ("NIOSH") recommends protective equipment be worn by workers expecting to be exposed to benzene at concentrations of 0.1 ppm and defines "skin absorption" as an exposure route.[2] Benzene is not listed as an active or inactive ingredient on any of the labels of Defendants' Sunscreen Products. Moreover, all of the Sunscreen Products are marketed and advertised in an identical manner — as "Sunscreen."

14.     On May 25, 2021, Valisure filed a citizen petition with the Food and Drug Administration ("FDA") asking the agency to recall all batches of Defendants' sunscreen products that (as tested) contained 0.1 ppm or more of benzene on the basis that they are adulterated under Section 501 of the FDCA (21 U.S.C. § 351) and misbranded under Section 502

---

[1] Discovery may reveal additional Sunscreen Products manufactured, sold, and distributed by Defendants that are affected by this action and Plaintiff reserves their right to include any such products in this action.
[2] Centers for Disease Control and Prevention. *The National Institute for Occupational Safety and Health (NIOSH), Benzene* (https://www.cdc.gov/niosh/npg/npgd0049.html).

of the FDCA (21 U.S.C. § 352). As of this filing, the FDA has not responded to Valisure's citizen petition and Defendants have not taken any action to remove the Sunscreen Product from the market.

15.    Benzene is used primarily as a solvent in the chemical and pharmaceutical industries, as a starting material and intermediate in the synthesis of numerous chemicals, and in gasoline. The major United States source of benzene is petroleum. The health hazards of benzene have been recognized for over one hundred years. According to the National Toxicology Program ("NTP"), benzene is "*known to be a human carcinogen* based on sufficient evidence of carcinogenicity from studies in humans."[3] Benzene has also been "found to be carcinogenic to humans" by the International Agency for Research on Cancer ("IARC"). Benzene was "[f]irst evaluated by IARC in 1974 . . . and was found to be carcinogenic to humans (Group 1), a finding that has stood since that time."[4] As noted by the IARC:

> In the current evaluation, the Working Group again confirmed the carcinogenicity of benzene based on *sufficient evidence* of carcinogenicity in humans, *sufficient evidence* of carcinogenicity in experimental animals, and *strong* mechanistic evidence. … The Working Group affirmed the strong evidence that benzene is genotoxic, and found that it also exhibits many other key characteristics of carcinogens, including in exposed humans. In particular, benzene is metabolically activated to electrophilic metabolites; induces oxidative stress and associated oxidative damage to DNA; is genotoxic; alters DNA repair or causes genomic instability; is immunosuppressive; alters cell proliferation, cell death, or nutrient supply; and modulates receptor-mediated effects.[5]

---

[3] http://ntp.niehs.nih.gov/go/roc/content/profiles/benzene.pdf (emphasis in original).
[4] Benzene / IARC Working Group on the Evaluation of Carcinogenic Risks to Humans (2017: Lyon, France), at p. 33.
[5] *Id.* at 34.

Likewise, the FDA recognizes that "[b]enzene is a carcinogen that can cause cancer in humans"[6] and classifies benzene as a "Class 1" solvent that should be "avoided."[7]  FDA's Guidance for Industry states that "Solvents in Class 1 . . . should not be employed in the manufacture of drug substances, excipients, and drug products because of their unacceptable toxicities or deleterious environmental effect."[8]

16.     The FDA regulates sunscreens to ensure they meet safety and effectiveness standards.[9] The FDA also regulates sunscreens, including the Sunscreen Product, as over-the-counter ("OTC") drugs rather than as cosmetics. As an FDA-regulated product, sunscreens must pass certain tests before they are sold. As noted on FDA's website,

> Every drug has active ingredients and inactive ingredients.  In the case of sunscreen, active ingredients are the ones that are protecting your skin from the sun's harmful UV rays.  Inactive ingredients are all other ingredients that are not active ingredients, such as water or oil that may be used in formulating sunscreens.[10]

Per the FDA regulations governing Defendants' Sunscreen Products, titled "Sunscreen Drug Products for Over-the-Counter Human Use,"[11] there are certain acceptable active ingredients in products that are labeled as sunscreen.[12]  Benzene, a known human carcinogen, is not on the FDA's list of acceptable active or inactive ingredients for any sunscreen products, regardless of manufacturer. Nor is benzene identified as an active or inactive ingredient on the

---

[6] https://www.fda.gov/food/chemicals/questions-and-answers-occurrence-benzene-soft-drinks-and-other-beverages#q1.

[7] https://www.fda.gov/media/71737/download.

[8] FDA Guidance for Industry, Q3C Impurities: Residual Solvents (6/30/2017), available at https://www.fda.gov/media/71736/download.

[9] *See generally* 21 CFR §§352.1– 352.77.

[10] https://www.fda.gov/drugs/understanding-over-counter-medicines/sunscreen-how-help-protect-your-skin-sun.

[11] 21 CFR §352.10.

[12] https://www.fda.gov/drugs/understanding-over-counter-medicines/sunscreen-how-help-protect-your-skin-sun.

labels of any of the Defendants' Sunscreen Products. Thus, Defendants' assurances in its marketing of its Sunscreen Products—e.g., that "[t]his product is safe for its intended use based on the formulation, testing results, and the long history of safe consumer use"—are false and misleading.[13]

17.     The governing regulations provide: "An over-the-counter sunscreen drug product in a form suitable for topical administration is generally recognized as safe and effective and is not misbranded if it meets each condition in this part and each general condition established in 330.1 of this chapter."[14] Defendants failed to meet this standard as further described below.

18.     The manufacture of any misbranded or adulterated drug is prohibited under federal law[15] and California state law.[16]

19.     The introduction into commerce of any misbranded or adulterated drug is similarly prohibited.[17]

20.     The receipt in interstate commerce of any adulterated or misbranded drug is also unlawful.[18]

21.     Among the ways a drug may be adulterated are:

---

[13]https://edgewell.com/wp-content/uploads/2016/08/92014320-BB-Dry-Oil-Spray-SPF-4.pdf.
[14] 21 CFR §352.1
[15] 21 U.S.C. §331(g).
[16] *See* Fla. Stat. § 499.005(1) ("It is unlawful for a person to perform or cause the performance of any of the following acts in this state: (1) The manufacture, repackaging, sale, delivery, or holding or offering for sale of any drug, device, or cosmetic that is adulterated or misbranded or has otherwise been rendered unfit for human or animal use.").
[17] 21 U.S.C. §331(a); Fla. Stat. § 499.005(1).
[18] 21 U.S.C. §331(c); *see also* Fla. Stat. § 499.005(3)("It is unlawful for a person to perform or cause the performance of any of the following acts in this state: … (3) The receipt of any drug, device, or cosmetic that is adulterated or misbranded, and the delivery or proffered delivery of such drug, device, or cosmetic, for pay or otherwise.").

If it consists in whole or in part of any filthy, putrid, or decomposed substance; or . . . whereby it may have been rendered injurious to health; . . . .[19]

22.    A drug is misbranded:

(a) "If its labeling is false or misleading in any particular."[20]

(b) If the labeling does not contain, among other things, "the proportion of each active ingredient[.]"[21]

(d) "If it is dangerous to health when used in the dosage or manner, or with the frequency or duration prescribed, recommended, or suggested in the labeling thereof."[22]

23.    If a manufacturer labels a drug but omits ingredients (the contaminant), that renders the drug misbranded.[23]

---

[19] 21 U.S.C. §351(a)(2)(B); *see also* Fla. Stat. § 499.006(1) & (2) ("A drug or device is adulterated, if any of the following apply: (1) It consists in whole or in part of any filthy, putrid, or decomposed substance[;] (2) It has been produced, prepared, packed, or held under conditions whereby it could have been contaminated with filth or rendered injurious to health.").

[19] 21 U.S.C. §352(a)(1); *see also* Fla. Stat. § 499.007(1) (A drug is misbranded "[i]f its labeling is in any way false or misleading.").

[20] 21 U.S.C. §352(e)(1)(A)(ii). *See also* Fla. Stat. § 499.007(2)(b) ("A drug or device is misbranded: … (2) If in package form, it does not bear a label containing: (b) An accurate statement of the quantity of the contents in terms of weight, measure, or numerical count.").

[20] 21 U.S.C. §352(a)(1); *see also* Fla. Stat. § 499.007(1) (A drug is misbranded "[i]f its labeling is in any way false or misleading.").

[21] 21 U.S.C. §352(e)(1)(A)(ii). *See also* Fla. Stat. § 499.007(2)(b) ("A drug or device is misbranded: … (2) If in package form, it does not bear a label containing: (b) An accurate statement of the quantity of the contents in terms of weight, measure, or numerical count.").

[21] 21 U.S.C. §352(j); *see also* Fla. Stat. § 499.007(10) (A drug is misbranded "[i]f it is dangerous to health when used in the dosage or with the frequency or duration prescribed, recommended, or suggested in the labeling of the drug.").

[22] 21 U.S.C. §352(j); *see also* Fla. Stat. § 499.007(10) (A drug is misbranded "[i]f it is dangerous to health when used in the dosage or with the frequency or duration prescribed, recommended, or suggested in the labeling of the drug.").

[23] 21 C.F.R. §§201.6. "The labeling of a drug may be misleading by reason (among other reasons) of: … (2) Failure to reveal the proportion of, or other fact with respect to, an ingredient present in such drug, when such proportion or other fact is material in the light of the representation that such ingredient is present in such drug." 21 C.F.R. §201.10(2). *See also* Fla. Stat. § 499.007(2)(b) ("A drug or device is misbranded: … (2) If in package form, it does not

24.     Because Defendants did not disclose benzene, a known human carcinogen, may

be present in the Sunscreen Product purchased by Plaintiff and the putative class members, the

Sunscreen Product are adulterated and misbranded. As noted by the World Health Organization,

there is no "no safe level of benzene" exposure, so it is unsuitable for human application as an

ingredient in sunscreen.[24]

25.     Defendants wrongfully advertised and sold the Sunscreen Products without any

labeling to indicate to consumers that these products may contain benzene. The following image

shows an example:



26.     Plaintiff has standing to represent members of the putative class because there is

sufficient similarity between the specific product purchased by the Plaintiff and the other

Sunscreen Products not purchased by Plaintiff. Specifically, each and every one of the Sunscreen

Product (i) are marketed in substantially the same way – as "Sunscreen"— and (ii) fail to include

bear a label containing: (b) An accurate statement of the quantity of the contents in terms of
weight, measure, or numerical count.").
[24] https://www.who.int/ipcs/features/benzene.pdf.

labeling indicating to consumers that the Sunscreen Products may contain benzene as an active or inactive ingredient. Accordingly, the misleading effect of all of the Sunscreen Products' labels are substantially the same.

### **CLASS ALLEGATIONS**

27.     Plaintiff brings this action on behalf of herself and all other similarly situated class members (the "Class") pursuant to Rule 23(a), (b)(2) and (b)(3) of the Federal Rules of Civil Procedure and seeks certification of the following class against Defendants for violations of Florida state laws and/or similar laws in other states:

> **Multi-State Class Action**
>
> All consumers who purchased any lotion or spray Banana Boat Sunscreen Product in the United States of America and its territories (excluding California) from June 17, 2017 to the present for personal use or consumption.
>
> Excluded from the Class are individuals who allege personal bodily injury resulting from the use of Banana Boat Sunscreen Products. Also excluded from this Class are Defendants, any parent companies, subsidiaries, and/or affiliates, officers, directors, legal representatives, employees, co-conspirators, all governmental entities, and any judge, justice or judicial officer presiding over this matter.

28.     In the alternative, Plaintiff brings this action on behalf of herself and all other similarly situated Florida consumers pursuant to Rule 23(a), (b)(2) and (b)(3) of the Federal Rules of Civil Procedure and seeks certification of the following class:

> **Florida-Only Class Action**
>
> All consumers who purchased any lotion or spray Banana Boat Sunscreen Product in the State of Florida from June 17, 2017 to the present for personal use or consumption.
>
> Excluded from the Class are individuals who allege personal bodily injury resulting from the use of Banana Boat Sunscreen Products. Also excluded from this Class are Defendants, any parent

companies, subsidiaries, and/or affiliates, officers, directors, legal representatives, employees, co-conspirators, all governmental entities, and any judge, justice or judicial officer presiding over this matter.

29.     The members of the Class are so numerous that joinder of all members of the Class is impracticable. Plaintiff is informed and believes that the proposed Class contains thousands of purchasers of Defendants' Sunscreen Products who have been damaged by Defendants' conduct as alleged herein. The precise number of Class members is unknown to Plaintiff at this time.

30.     Plaintiff's claims are typical to those of all class members because members of the class are similarly injured through Defendants' uniform misconduct described above and were subject to Defendants' deceptive sunscreen claims that accompanied each and every sunscreen product in the Banana Boat collection. Plaintiff is advancing the same claims and legal theories on behalf of himself and all members of the Class.

31.     Plaintiff's claims raise questions of law and fact common to all members of the Class, and they predominate over any questions affecting only individual Class members. The claims of Plaintiff and all prospective Class members involve the same alleged defect. These common legal and factual questions include the following:

(a)   whether Defendants' Sunscreen Products contained benzene;

(b)   whether Defendants' omissions are true, or are misleading, or objectively reasonably likely to deceive;

(c)   whether the alleged conduct constitutes violations of the laws asserted;

(d)   whether Defendants' alleged conduct violates public policy;

(e)   whether Defendants engaged in false or misleading advertising;

(f)   whether Defendants were unjustly enriched as a result of their labeling, marketing, advertising and/or selling of the Sunscreen Products;

(g)   whether Plaintiff and the Class members are entitled to damages and/or restitution and the proper measure of that loss; and

(h)   whether an injunction is necessary to prevent Defendants from continuing to market and sell defective and adulterated Sunscreen Products that contain benzene, a known human carcinogen.

32.   Plaintiff and her counsel will fairly and adequately protect and represent the interests of each member of the class. Plaintiff has retained counsel experienced in complex litigation and class actions. Plaintiff's counsel has successfully litigated other class action cases similar to that here and have the resources and abilities to fully litigate and protect the interests of the class. Plaintiff intends to prosecute this claim vigorously. Plaintiff has not adverse or antagonistic interests to those of the Class, nor is Plaintiff subject to any unique defenses.

33.   A class action is superior to the other available methods for a fair and efficient adjudication of this controversy. The damages or other financial detriment suffered by the Plaintiff and individual Class members is relatively small compared to the burden and expense that would be entailed by individual litigation of their claims against Defendants. It would thus be virtually impossible for Plaintiff and Class members, on an individual basis, to obtain effective redress for the wrongs done to them. Further, it is desirable to concentrate the litigation of the Class members' claims in one forum, as it will conserve party and judicial resources and facilitate the consistency of adjudications. Plaintiff knows of no difficulty that would be encountered in the management of this case that would preclude its maintenance as a class action.

34.     The Class also may be certified because Defendants have acted or refused to act on grounds applicable to the Class, thereby making appropriate final declaratory and/or injunctive relief with respect to the members of the Class as a whole.

35.     Plaintiff seeks preliminary and permanent injunctive and equitable relief on behalf of the entire Class, on grounds generally applicable to the entire Class, to enjoin and prevent Defendants from engaging in the acts described above, such as continuing to market and sell Sunscreen Products that may be adulterated with benzene, and requiring Defendants to provide a full refund of the purchase price of the Sunscreen Products to Plaintiff and Class members.

36.     Unless a Class is certified, Defendants will retain monies received as a result of their conduct that were taken from Plaintiff and the Class members. Unless a Class-wide injunction is issued, Defendants will continue to commit the violations alleged and the members of the Class and the general public will continue to be misled.

## FIRST CAUSE OF ACTION

### Violation of Florida's Deceptive and Unfair Trade Practices Act, Fla. Stat. §§ 501.201-213

#### (On Behalf of the Multi-State Class and Florida-Only Class)

37.     Plaintiff incorporates by reference and re-alleges each and every allegation contained above, as though fully set forth herein.

38.     Plaintiff brings this claim individually and on behalf of the Class.

39.     The Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") renders unlawful unfair methods of competition, unconscionable acts or practice, and unfair or deceptive acts or practices in the conduct of any trade or commerce. § 501.204, Fla. Stat.

40.     Among other purposes, FDUTPA is intended "[t]o protect the consuming public and legitimate business enterprises from those who engage in unfair methods of competition, or

unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce."
§ 501.202, Fla. Stat.

41.     As alleged herein, Plaintiff has suffered injury in fact and lost money as a result of
Defendants' conduct because she purchased Sunscreen Products from Defendants in reliance on
Defendants' representation that the ingredients in their Sunscreen Products were safe and
effective and were not adulterated with benzene, a known human carcinogen.

42.     As alleged herein, Defendants' actions are deceptive and in clear violation of
FDUTPA, entitling Plaintiff and the Class to damages and relief under Fla. Stat. §§ 501.201-213.

Defendants have engaged, and continue to engage, in conduct that is likely to deceive
members of the public. This conduct includes representing in their labels that their Sunscreen
Products contain only the ingredients listed in the label, which is untrue, and failing to make any
mention that the certain Sunscreen Products are adulterated with benzene, a known human
carcinogen.

43.     Similarly, Defendants have engaged, and continue to engage, in deceptive, untrue,
and misleading advertising by representing that their Sunscreen Products (1) "provide today's
busy family with sun protection without worry when used and reapplied as directed,"[25] (2) offer
"safe and effective sun protection,"[26] and (3) are "safe for [their] intended use based on the
formulation, testing results, and the long history of safe consumer use."[27] Representatives of one
or more Edgewell Defendants have further represented to consumers that "all Banana Boat
products undergo rigorous testing to ensure they are appropriately labeled and meet all relevant

---

[25] https://ir.edgewell.com/news-and-events/press-releases/2018/05-01-2018-
130128066?sc_lang=en.
[26] https://ir.edgewell.com/news-and-events/press-releases/2018/05-01-2018-
130128066?sc_lang=en.
[27]https://edgewell.com/wp-content/uploads/2016/08/92014320-BB-Dry-Oil-Spray-SPF-4.pdf.

health regulations, including SPF tests."[28] Such representations cannot be true, however, given that independent testing by Valisure has confirmed that certain of Defendants' Sunscreen Products contain a known (but undisclosed) human carcinogen (i.e. benzene). Defendants further market their Sunscreen Products specifically to parents, by offering a Kids and Baby portfolio of Sunscreen Products. These marketing efforts claim to "know families are interested in sunscreen without any extra ingredients like dyes or perfumes – but with the same trusted protection Banana Boat has always provided"[29]—all while failing to disclose to parents that products such as Banana Boat Spray Kids Max Protect & Play Sunscreen C-Spray SPF 100 (as tested by Valisure) contains the "extra ingredient" benzene.

44.     By committing the acts alleged above, Defendants have engaged in unconscionable, deceptive, or unfair acts or practices, which constitute unfair competition within the meaning of FDUTPA.[30]

45.     Defendants' conduct is substantially injurious to consumers. Consumers are purchasing and, as instructed in the label, "apply[ing] liberally" Defendants' Sunscreen Products without knowledge that there is a risk the Sunscreen Products may be adulterated with a human carcinogen. This conduct has caused, and continues to cause, substantial injury to consumers because consumers would not have paid for sunscreens potentially adulterated with benzene but for Defendants' false labeling, advertising, and promotion. Thus, Plaintiff and the putative Class

---

[28] https://www.10news.com/news/national/dermatologists-say-these-sunscreen-ingredients-can-cause-blisters-and-burns-on-some-childrens-skin.

[29] https://ir.edgewell.com/news-and-events/press-releases/2018/05-01-2018-130128066?sc_lang=en.

[30] Defendants' conduct violates Section 5 of the Federal Trade Commission "("FTC") Act, 15 U.S.C. § 45, which prohibits unfair methods of competition and unfair or deceptive acts or practices in or affecting commerce.

have been "aggrieved" (i.e. lost money) as required for FDUTPA standing, and such an injury is not outweighed by any countervailing benefits to consumers or competition.

46.     Indeed, no benefit to consumers or competition results from Defendants' conduct. Since consumers reasonably rely on Defendants' representation of the ingredients contained in their Sunscreen Products' labels and injury resulted from ordinary use of the Sunscreen Products, consumers could not have reasonably avoided such injury.

47.     Further, Defendants' conduct is ongoing and continuing, such that prospective injunctive relief is necessary. Plaintiff is a long time user of Defendants' Sunscreen Products, and she desires to purchase Defendants' Sunscreen Products in the future if she can be assured that the Sunscreen Products are unadulterated and meet the advertising claims. Absent injunctive relief, Defendants may continue to advertise, promote and sell adulterated Sunscreen Products that deceive the public as to their ingredients and safety. Plaintiff is thus likely to again be wronged in a similar way. For example, if Plaintiff encounters Defendants' Sunscreen Products in the future and there is a risk those products still contain benzene, Plaintiff may mistakenly rely on the product's label to believe that Defendants eliminated benzene when they did not.

48.     Florida Statutes, Section 501.204, makes unfair and/or deceptive trade practices in the conduct of any trade or commerce illegal.

49.     Florida Statutes, Section 501.211, creates a private right of action for individuals who are aggrieved by an unfair and/or deceptive trade practice by another person.

50.     Florida Statutes, Section 501.2105, provides that the prevailing party in litigation arising from a cause of action pursuant to Chapter 501 shall be entitled to recover attorney's fees within the limitations set forth therein form the non-prevailing party.

51.     Florida Statutes, Section 501.213, provides that any remedies available under Chapter 501 are in addition to any other remedies otherwise available for the same conduct under state or local law.

52.     Florida Statutes, Section 501.203 (3)(c), states that a person has violated the FDUTPA if he violates "any law, statute, rule, regulation, or ordinance which proscribes unfair, deceptive, or unconscionable acts or practices."

53.     Defendants are engaged in the practice of manufacturing, marketing, distributing, selling and otherwise placing into the stream of commerce Sunscreen Products which constitutes trade and commerce as defined by Sections 501.203(8) Fla. Stat., and is therefore subject to FDUPTA.

54.     As a result of Defendants' unfair and deceptive trade practices, Plaintiff and the putative Class s are entitled to an award of attorney's fees pursuant to FDUTPA, Florida Statutes, Section 501.2105, if she prevails.

55.     Wherefore, Plaintiff prays for judgement against Defendants, as set forth hereafter. Defendants' conduct with respect to the labeling, advertising, marketing, and sale of their Sunscreen Products is unfair because Defendant's conduct was immoral, unethical, unscrupulous, or substantially injurious to consumers and the utility of its conduct, if any, does not outweigh the gravity of the harm to its victims.

56.     In accordance with FDUTPA,[31] Plaintiff seeks an order enjoining Defendants from continuing to conduct business through fraudulent or unlawful acts and practices and to commence a corrective advertising campaign. Defendants' conduct is ongoing and continuing, such that prospective injunctive relief is necessary.

---

[31] Section 501.211(1) allows "anyone aggrieved by a violation of" FDUTPA to seek declaratory or injunctive relief. Fla. Stat. §501.211.

57.     On behalf of Plaintiff and the putative Class, Plaintiff also seeks an order entitling them to recover all monies spent on the Defendants' Sunscreen Products, which were acquired through acts of fraudulent, unfair, or unlawful competition.[32] In addition, the measure of restitution should be full refund of the purchase price insofar as the Sunscreen Products and their associated labels are worthless. But for Defendants' misrepresentations and omissions, Plaintiff would have paid nothing for Sunscreen Products that have a risk of containing a known human carcinogen (i.e. benzene). Indeed, there is no discernible "market" for an over-the-counter sunscreen product that may be adulterated with a known human carcinogen. As recognized by the WHO, "[b]enzene is carcinogenic to humans, and no safe level of benzene can be recommended."[33] As a result, the Defendants' Sunscreen Products are rendered valueless.

58.     Wherefore, Plaintiff and members of the Class are entitled to injunctive and equitable relief, and a full refund in the amount they spent on the Defendants' Sunscreen Products.

### SECOND CAUSE OF ACTION

### Unjust Enrichment

### (On Behalf of the Multi-State Class and Florida-Only Class)

59.     Plaintiff incorporates by reference and re-alleges each and every allegation contained above, as though fully set forth herein.

60.     As a result of Defendants' wrongful and deceptive conduct alleged herein, Defendants knowingly and voluntarily accepted and retained wrongful benefits in the form of

---

[32] Section 501.211(2) provides that "a person who has suffered a loss as a result of a [FDUTPA] violation ... may recover actual damages . . . ."
[33] https://www.who.int/ipcs/features/benzene.pdf.

money paid by the Plaintiff and members of the Class when they purchased the Sunscreen Products.

61.     In so doing, Defendants acted with conscious disregard for the rights of Plaintiff and members of the Class.

62.     As a result of Defendants' wrongful conduct as alleged herein, Defendants have been unjustly enriched at the expense of, and to the detriment of, Plaintiff and members of the Class.

63.     Defendants' unjust enrichment is traceable to, and resulted directly and proximately from, the conduct alleged herein.

64.     Under the common law doctrine of unjust enrichment, it is inequitable for Defendants to be permitted to retain the benefits it received, and is still receiving, without justification, from the false and deceptive labeling and marketing of the Sunscreen Products to Plaintiff and members of the Class.

65.     Defendants' retention of such funds under circumstances making it inequitable to do so constitutes unjust enrichment.

66.     The financial benefits derived by Defendants rightfully belong to Plaintiff and members of the Class.

67.     Defendants should be compelled to disgorge in a common fund for the benefit of Plaintiff and members of the Class all wrongful or inequitable proceeds received by them.

68.     Finally, Plaintiff and members of the Class may assert an unjust enrichment claim even though a remedy at law may otherwise exist.[34]

---

[34] *See State Farm Mut. Auto Ins. Co. v. Physicians Injury Care Ctr.,* 427 F. App'x 714, 723 (11th Cir. 2011), *rev'd on other grounds*, 824 F.3d 1311 (The general rule that "equitable remedies are not available under Florida law when adequate legal remedies exist . . . does not apply to unjust enrichment claims."); *see also Morris v. ADT Sec. Services*, 580 F.Supp.2d 1305, 1312-13 (S.D.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, pray for judgment against the Defendants as to each and every count, including:

A.      An order declaring this action to be a proper class action, appointing Plaintiff and their counsel to represent the Class, and requiring Defendants to bear the costs of class notice;

B.      An order enjoining Defendants from selling the Sunscreen Products;

C.      An order enjoining Defendants from suggesting or implying that they are safe and effective for human application;

D.      An order requiring Defendants to engage in a corrective advertising campaign and engage in any further necessary affirmative injunctive relief, such as recalling existing Sunscreen Products;

E.      An order awarding declaratory relief, and any further retrospective or prospective injunctive relief permitted by law or equity, including enjoining Defendants from continuing the unlawful practices alleged herein, and injunctive relief to remedy Defendants' past conduct;

F.      An order requiring Defendants to pay restitution/damages to restore all funds acquired by means of any act or practice declared by this Court to be an unlawful, unfair, or fraudulent business act or practice, untrue or misleading advertising in violation of the FDUTPA, plus pre- and post-judgment interest thereon;

---

Fla. 2008); *In re Monat Hair Prods. Mktg., Sales Prac., and Prods. Liab. Litig.*, 2019 WL 5423457, at *5 (S.D. Fla. Oct. 23, 2019); *Garcia v. Clarins USA, Inc.*, 2014 WL 11997812, at *5 (S.D. Fla. Sept. 5, 2014); *Goldberg v. Chong,* 2007 WL 2028792 at *9 (S.D. Fla. July 11, 2007).

G.      An order requiring Defendant to disgorge any ill-gotten benefits received from

Plaintiff and members of the Class as a result of any wrongful or unlawful act or

practice;

H.      An order requiring Defendant to pay all actual and statutory damages permitted

under the counts alleged herein;

I.       An order awarding attorneys' fees and costs to Plaintiff and the Class; and

J.       An order providing for all other such equitable relief as may be just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury on all issues so triable.

DATED: June 17, 2021.

By:  R. Jason Richards
AYLSTOCK, WITKIN, KREIS & OVERHOLTZ, PLLC
R. JASON RICHARDS (FL Bar # 18207)
17 East Main Street, Suite 200
Pensacola, FL 32502
Telephone: 850-202-1010
Facsimile: 850-916-7449
E-mail: jrichards@awkolaw.com
*Attorneys for Plaintiff*