UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Miami Division

Case No. 1:21-cv-22232-CMA

MARIA ZAPATERO and ADAM HART,
on behalf of themselves and all others
similarly situated,

                Plaintiffs,

vs.

ENERGIZER HOLDINGS, INC.,
EDGEWELL PERSONAL CARE
COMPANY, EDGEWELL PERSONAL
CARE BRANDS, LLC, EDGEWELL
PERSONAL CARE, LLC, PLAYTEX
PRODUCTS, INC., SUN
PHARMACEUTICALS, LLC;

      Defendants.

## FIRST AMENDED CLASS ACTION COMPLAINT

Plaintiffs, Maria Zapatero and Adam Hart ("Plaintiffs"), on behalf of themselves and all others similarly situated, files this First Amended Class Action Complaint ("CAC") against Defendants Energizer Holdings, Inc., Edgewell Personal Care Company, Edgewell Personal Care Brands, LLC, Edgewell Personal Care, LLC, Playtex Products, Inc., and Sun Pharmaceuticals, LLC (collectively, "Defendants"), and in support state the following:

## NATURE OF THE ACTION

1.     This is a class action lawsuit by Plaintiffs, and others similarly situated, who purchased Banana Boat sunscreen products manufactured, marketed, sold and/or distributed by Defendants. Defendants distribute, market and sell several over-the-counter sunscreen products under their brand name "Banana Boat." Several of Defendants' Banana Boat sunscreen products have been independently tested and shown to be adulterated with benzene, a known human

carcinogen. The presence of benzene in Defendants' Banana Boat sunscreen products was not disclosed in the products' label, in violation of state and federal law. Plaintiffs and the putative class suffered economic damages due to Defendants' misconduct (as set forth below) and they seek injunctive relief and restitution for the full purchase price of the sunscreen product(s) they purchased. Plaintiffs allege the following based upon personal knowledge as well as investigation by counsel, and as to all other matters, upon information and belief. Plaintiffs further believe that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## JURISDICTION AND VENUE

2.      This Court has original jurisdiction over all causes of action asserted herein under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2), because the matter in controversy exceeds the sum or value of $5,000,000 exclusive of interest and costs and is a class action in which there are more than 100 class members and many members of the class are citizens of a state different than Defendants.

3.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a) and (b) because Plaintiffs suffered injury as a result of Defendants' acts in this district, many of the acts and transactions giving rise to this action occurred in this district, Defendants conduct substantial business in this district, Defendants have intentionally availed themselves of the laws and markets of this district, and Defendants are subject to personal jurisdiction in this district.

## THE PARTIES

4.      Plaintiff Maria Zapatero ("Zapatero") is a citizen and resident of Miami, Florida, and at all times relevant hereto has been a resident of Miami-Dade County. In or around 2019, Zapatero purchased Banana Boat brand sunscreen products, including Banana Boat Ultra Sport

Sunscreen Spray, from Walgreens, located at 16795 S. Dixie Hwy., Miami, Florida 33157. During this time, Zapatero was unaware that Defendants' sunscreen products may be adulterated with benzene. Zapatero purchased the Defendants' sunscreen products on the assumption that the labeling of these products was accurate and that the products were unadulterated, safe and effective. Zapatero would not have purchased Defendants' sunscreen products had she known there was a risk the products may contain benzene, a known human carcinogen. As a result, Zapatero suffered injury in fact when she spent money to purchase sunscreen products she would not otherwise have purchased absent Defendants' misconduct, as alleged herein.

5.      Plaintiff Adam Hart ("Hart") is a citizen and resident of Stuart, Florida, and at all times relevant hereto, has been a resident of Martin County. Within the past four years, Hart has purchased numerous Banana Boat Sunscreen Products, including Banana Boat Ultra Sport and Kids Max Protect & Play Sunscreen. Hart regularly purchased these Sunscreen Products from (1) Target, located at 2650 NW Federal Hwy, Stuart, Florida 34994; (2) CVS, located at 2651 NW Federal Hwy, Stuart, Florida 34994; and/or (3) Amazon.com, an online retailer.  During that time, based on the false and misleading claims by Defendants, Hart was unaware that Defendant's sunscreen products may be adulterated with benzene. Hart purchased the Defendant's sunscreen product on the assumption that the labeling of Defendant's sunscreen product was accurate and that the product was unadulterated, safe and effective. Hart would not have purchased Defendant's sunscreen product had he known there was a risk the product may contain benzene, a known human carcinogen. As a result, Hart suffered injury in fact when he spent money to purchase a product she would not otherwise have purchased absent Defendant's misconduct, as alleged herein.

6.      Defendant Energizer Holdings, Inc. ("Energizer") is a Missouri corporation, having a principal place of business at 533 Maryville University Drive, St. Louis, Missouri 63141. Energizer manufactures, distributes, markets and/or sells sun care products under the Banana Boat brand to consumers nationwide, including California. Energizer may be served via its registered agent at: C T Corporation System, at 120 S. Central Ave., Clayton, MO 63015.

7.      Edgewell Personal Care Company is a foreign business corporation with its principal place of business in Chesterfield, Missouri. Edgewell Personal Care Company is licensed to and does business throughout the United States, including California. Edgewell Personal Care Company manufactures, distributes, markets and/or sells personal care products, including Banana Boat sunscreen products, to consumers nationwide, including California. Edgewell Personal Care Company may be served via its registered agent at: Corporate Creations Network, Inc., 12747 Olive Blvd., #300, St. Louis, MO 63141.

8.      Edgewell Personal Care Brands, LLC is a limited liability company organized under the laws of the State of Delaware with its principal place of business in Shelton, Connecticut. Edgewell Personal Care Brands, LLC is a wholly-owned subsidiary of Edgewell Personal Care Company. Edgewell Personal Care Brands, LLC manufactures, distributes, markets and/or sells personal care products, including Banana Boat sunscreen products, to consumers nationwide, including California. Edgewell Personal Care Brands, LLC may be served via its registered agent at: Corporate Creations Network, Inc., 12747 Olive Blvd., #300, St. Louis, MO 63141.

9.      Edgewell Personal Care, LLC is a limited liability company organized under the laws of the State of Delaware with its principal place of business in Shelton, Connecticut. Edgewell Personal Care, LLC is a wholly-owned subsidiary of Edgewell Personal Care

Company. Edgewell Personal Care, LLC manufactures, distributes, markets and/or sells personal care products, including Banana Boat sunscreen products, to consumers nationwide, including California. Edgewell Personal Care, LLC may be served via its registered agent at: Corporate Creations Network, Inc., 12747 Olive Blvd., #300, St. Louis, MO 63141.

10.     At all relevant times, each and every "Edgewell" Defendant was acting as an agent and/or employee of each of the other "Edgewell" Defendants with respect to the manufacturing, marketing, selling and/or distributing of Banana Boat sunscreen products, and was the owner, agent, servant, joint-venturer and employee, each of the other and each was acting within the course and scope of its ownership, agency, service, joint venture and employment with the full knowledge and consent of each of the other "Edgewell" Defendants. On information and belief, each of the acts and/or omissions complained of herein were made known to, and ratified by, each of the other "Edgewell" Defendants. All three "Edgewell" Defendants will be referred to collectively, hereinafter, as "Edgewell."

11.     Playtex Products, LLC is a limited liability company organized under the laws of the State of Delaware with its principal place of business in Shelton, Connecticut. Playtex Products, LLC is a wholly-owned subsidiary of Edgewell Personal Care Company. Playtex Products, LLC manufactures, distributes, markets and/or sells Banana Boat sunscreen products as one of its brands to consumers nationwide, including California. Playtex Products, LLC may be served via its registered agent at: Corporate Creations Network, Inc., 3411 Silverside Road, Tatnall Building, Ste., 104, Wilmington, DE 19810.

12.     Sun Pharmaceuticals, LLC ("Sun Pharmaceuticals") is a limited liability company organized under the laws of Delaware with its principal place of business in Shelton, Connecticut. Sun Pharmaceuticals is a wholly-owned subsidiary of Edgewell Personal Care

Company. Sun Pharmaceuticals manufactures, distributes, markets and/or sells personal care products, including Banana Boat sunscreen products, to consumers nationwide, including California. Sun Pharmaceuticals may be served via its registered agent at: Corporate Creations Network, Inc., 3411 Silverside Road, Tatnall Building, Ste., 104, Wilmington, DE 19810.

## INTRODUCTION

13.    Defendants manufacture, market, advertise, label, distribute, and/or sell a variety of Banana Boat sunscreen spray/aerosol products and lotions, including:

| 1  | Banana Boat | Spray  | Deep Tanning Dry Oil Clear Sunscreen Spray SPF 4 |
|----|-------------|--------|--------------------------------------------------|
| 2  | Banana Boat | Spray  | Kids Max Protect & Play Sunscreen C-Spray SPF 100 |
| 3  | Banana Boat | Lotion | Kids Mineral Based Sunscreen Lotion SPF 50+ |
| 4  | Banana Boat | Spray  | Kids Sport Sunscreen Lotion Spray SPF 50 |
| 5  | Banana Boat | Spray  | Protective Dry Oil Clear Sunscreen Spray with Coconut Oil FPS 15 |
| 6  | Banana Boat | Spray  | Simply Protect Kids Sunscreen Spray SPF 50+ |
| 7  | Banana Boat | Spray  | Simply Protect Sensitive Mineral Enriched Sunscreen Lotion Spray SPF 50 |
| 8  | Banana Boat | Spray  | Ultra Defense Ultra Mist Clear Sunscreen Spray SPF 100 |
| 9  | Banana Boat | Spray  | Ultra Sport Clear Sunscreen Spray SPF 100 |
| 10 | Banana Boat | Lotion | Ultra Sport Sunscreen Lotion SPF 100 |
| 11 | Banana Boat | Spray  | Ultra Sport Clear Sunscreen Spray SPF 30 |
| 12 | Banana Boat | Spray  | Ultra Sport Clear Sunscreen Spray SPF 50 (hereafter collectively referred to as "Sunscreen Products").[1] |

---

[1] Discovery may reveal additional Sunscreen Products manufactured, sold, and distributed by Defendants that are affected by this action and Plaintiff reserves their right to include any such products in this action.

14.     In 2020, Valisure LLC and ValisureRX LLC ("Valisure"), an analytical pharmacy, ran tests on a variety of Defendants' Sunscreen Products. Specifically, Valisure tested numerous lots of Defendants' spray and lotion Sunscreen Products. Through its testing, Valisure discovered that certain of the Sunscreen Products contain benzene, with values ranging from less than 0.1 parts per million ("ppm"), 0.10 ppm to 2 ppm, and more than 2 ppm. For reference, the National Institute for Occupational Safety and Health ("NIOSH") recommends protective equipment be worn by workers expecting to be exposed to benzene at concentrations of 0.1 ppm and defines "skin absorption" as an exposure route.[2] Benzene is not listed as an active or inactive ingredient on any of the labels of Defendants' Sunscreen Products. Moreover, all of the Sunscreen Products are marketed and advertised in an identical manner — as "Sunscreen."

14.     On May 25, 2021, Valisure filed a citizen petition with the Food and Drug Administration ("FDA") asking the agency to recall all batches of Defendants' sunscreen products that (as tested) contained 0.1 ppm or more of benzene on the basis that they are adulterated under Section 501 of the FDCA (21 U.S.C. § 351) and misbranded under Section 502 of the FDCA (21 U.S.C. § 352). As of this filing, Defendants have not taken any action to remove any of the Sunscreen Products from the market.

15.     Benzene is used primarily as a solvent in the chemical and pharmaceutical industries, as a starting material and intermediate in the synthesis of numerous chemicals, and in gasoline. The major United States source of benzene is petroleum. The health hazards of benzene have been recognized for over one hundred years. According to the National Toxicology Program ("NTP"), benzene is "*known to be a human carcinogen* based on sufficient evidence of

---

[2] Centers for Disease Control and Prevention. *The National Institute for Occupational Safety and Health (NIOSH), Benzene* (https://www.cdc.gov/niosh/npg/npgd0049.html).

carcinogenicity from studies in humans."[3] Benzene has also been "found to be carcinogenic to humans" by the International Agency for Research on Cancer ("IARC"). Benzene was "[f]irst evaluated by IARC in 1974 . . . and was found to be carcinogenic to humans (Group 1), a finding that has stood since that time."[4] As noted by the IARC:

> In the current evaluation, the Working Group again confirmed the carcinogenicity of benzene based on *sufficient evidence* of carcinogenicity in humans, *sufficient evidence* of carcinogenicity in experimental animals, and *strong* mechanistic evidence. … The Working Group affirmed the strong evidence that benzene is genotoxic, and found that it also exhibits many other key characteristics of carcinogens, including in exposed humans. In particular, benzene is metabolically activated to electrophilic metabolites; induces oxidative stress and associated oxidative damage to DNA; is genotoxic; alters DNA repair or causes genomic instability; is immunosuppressive; alters cell proliferation, cell death, or nutrient supply; and modulates receptor-mediated effects.[5]

Likewise, the FDA recognizes that "[b]enzene is a carcinogen that can cause cancer in humans"[6] and classifies benzene as a "Class 1" solvent that should be "avoided."[7] FDA's Guidance for Industry states that "Solvents in Class 1 . . . should not be employed in the manufacture of drug substances, excipients, and drug products because of their unacceptable toxicities or deleterious environmental effect."[8]

16.     The FDA regulates sunscreens to ensure they meet safety and effectiveness standards.[9] The FDA also regulates sunscreens, including the Sunscreen Product, as over-the-

---

[3] http://ntp.niehs.nih.gov/go/roc/content/profiles/benzene.pdf (emphasis in original).
[4] Benzene / IARC Working Group on the Evaluation of Carcinogenic Risks to Humans (2017: Lyon, France), at p. 33.
[5] *Id.* at 34.
[6] https://www.fda.gov/food/chemicals/questions-and-answers-occurrence-benzene-soft-drinks-and-other-beverages#q1.
[7] https://www.fda.gov/media/71737/download.
[8] FDA Guidance for Industry, Q3C Impurities: Residual Solvents (6/30/2017), available at https://www.fda.gov/media/71736/download.
[9] *See generally* 21 CFR §§352.1– 352.77.

counter ("OTC") drugs rather than as cosmetics. As an FDA-regulated product, sunscreens must

pass certain tests before they are sold. As noted on FDA's website,

> Every drug has active ingredients and inactive ingredients. In the
> case of sunscreen, active ingredients are the ones that are protecting
> your skin from the sun's harmful UV rays. Inactive ingredients are
> all other ingredients that are not active ingredients, such as water or
> oil that may be used in formulating sunscreens.[10]

Per the FDA regulations governing Defendants' Sunscreen Products, titled "Sunscreen

Drug Products for Over-the-Counter Human Use,"[11] there are certain acceptable active

ingredients in products that are labeled as sunscreen.[12] Benzene, a known human carcinogen, is

not on the FDA's list of acceptable active or inactive ingredients for any sunscreen products,

regardless of manufacturer. Nor is benzene identified as an active or inactive ingredient on the

labels of any of the Defendants' Sunscreen Products. Thus, Defendants' assurances in its

marketing of their Sunscreen Products—e.g., that "[t]his product is safe for its intended use

based on the formulation, testing results, and the long history of safe consumer use"—are false

and misleading.[13]

17.     The governing regulations provide: "An over-the-counter sunscreen drug product

in a form suitable for topical administration is generally recognized as safe and effective and is

not misbranded if it meets each condition in this part and each general condition established in

330.1 of this chapter."[14] Defendants failed to meet this standard as further described below.

---

[10] https://www.fda.gov/drugs/understanding-over-counter-medicines/sunscreen-how-help-
protect-your-skin-sun.
[11] 21 CFR §352.10.
[12] https://www.fda.gov/drugs/understanding-over-counter-medicines/sunscreen-how-help-
protect-your-skin-sun.
[13] https://edgewell.com/wp-content/uploads/2016/08/92014320-BB-Dry-Oil-Spray-SPF-4.pdf.
[14] 21 CFR §352.1

18.     The manufacture of any misbranded or adulterated drug is prohibited under federal law[15] and California state law.[16]

19.     The introduction into commerce of any misbranded or adulterated drug is similarly prohibited.[17]

20.     The receipt in interstate commerce of any adulterated or misbranded drug is also unlawful.[18]

21.     Among the ways a drug may be adulterated are:

> If it consists in whole or in part of any filthy, putrid, or decomposed substance; or . . . whereby it may have been rendered injurious to health; . . . .[19]

22.      A drug is misbranded:

> (a) "If its labeling is false or misleading in any particular."[20]

---

[15] 21 U.S.C. §331(g).

[16] *See* Fla. Stat. § 499.005(1) ("It is unlawful for a person to perform or cause the performance of any of the following acts in this state: (1) The manufacture, repackaging, sale, delivery, or holding or offering for sale of any drug, device, or cosmetic that is adulterated or misbranded or has otherwise been rendered unfit for human or animal use.").

[17] 21 U.S.C. §331(a); Fla. Stat. § 499.005(1).

[18] 21 U.S.C. §331(c); *see also* Fla. Stat. § 499.005(3)("It is unlawful for a person to perform or cause the performance of any of the following acts in this state: … (3) The receipt of any drug, device, or cosmetic that is adulterated or misbranded, and the delivery or proffered delivery of such drug, device, or cosmetic, for pay or otherwise.").

[19] 21 U.S.C. §351(a)(2)(B); *see also* Fla. Stat. § 499.006(1) & (2) ("A drug or device is adulterated, if any of the following apply: (1) It consists in whole or in part of any filthy, putrid, or decomposed substance[;] (2) It has been produced, prepared, packed, or held under conditions whereby it could have been contaminated with filth or rendered injurious to health.").

[19] 21 U.S.C. §352(a)(1); *see also* Fla. Stat. § 499.007(1) (A drug is misbranded "[i]f its labeling is in any way false or misleading.").

[20] 21 U.S.C. §352(e)(1)(A)(ii). *See also* Fla. Stat. § 499.007(2)(b) ("A drug or device is misbranded: … (2) If in package form, it does not bear a label containing: (b) An accurate statement of the quantity of the contents in terms of weight, measure, or numerical count.").

[20] 21 U.S.C. §352(a)(1); *see also* Fla. Stat. § 499.007(1) (A drug is misbranded "[i]f its labeling is in any way false or misleading.").

(b) If the labeling does not contain, among other things, "the proportion of each active ingredient[.]"[21]

(d) "If it is dangerous to health when used in the dosage or manner, or with the frequency or duration prescribed, recommended, or suggested in the labeling thereof."[22]

23.    If a manufacturer labels a drug but omits ingredients (the contaminant), that renders the drug misbranded.[23]

24.    Because Defendants did not disclose benzene, a known human carcinogen, may be present in the Sunscreen Products purchased by Plaintiffs and the putative class members, the Sunscreen Product are adulterated and misbranded. As noted by the World Health Organization, there is no "no safe level of benzene" exposure, so it is unsuitable for human application as an ingredient in sunscreen.[24]

25.     Defendants wrongfully advertised and sold the Sunscreen Products without any labeling to indicate to consumers that these products may contain benzene. The following image shows an example:

---

[21] 21 U.S.C. §352(e)(1)(A)(ii). *See also* Fla. Stat. § 499.007(2)(b) ("A drug or device is misbranded: … (2) If in package form, it does not bear a label containing: (b) An accurate statement of the quantity of the contents in terms of weight, measure, or numerical count.").
[21] 21 U.S.C. §352(j); *see also* Fla. Stat. § 499.007(10) (A drug is misbranded "[i]f it is dangerous to health when used in the dosage or with the frequency or duration prescribed, recommended, or suggested in the labeling of the drug.").
[22] 21 U.S.C. §352(j); *see also* Fla. Stat. § 499.007(10) (A drug is misbranded "[i]f it is dangerous to health when used in the dosage or with the frequency or duration prescribed, recommended, or suggested in the labeling of the drug.").
[23] 21 C.F.R. §§201.6. "The labeling of a drug may be misleading by reason (among other reasons) of: … (2) Failure to reveal the proportion of, or other fact with respect to, an ingredient present in such drug, when such proportion or other fact is material in the light of the representation that such ingredient is present in such drug." 21 C.F.R. §201.10(2). *See also* Fla. Stat. § 499.007(2)(b) ("A drug or device is misbranded: … (2) If in package form, it does not bear a label containing: (b) An accurate statement of the quantity of the contents in terms of weight, measure, or numerical count.").
[24] https://www.who.int/ipcs/features/benzene.pdf.



**Active Ingredients**
Avobenzone 3.0%, Homosalate 10.0%, Octisalate 5.0%, Octocrylene 10.0%, Oxybenzone 6.0%

**Inactive ingredients:** Alcohol Denat., Isobutane, VA/Butyl Maleate/Isobornyl Acrylate Copolymer, Caprylyl Glycol, Cyclopentasiloxane, Cyclohexasiloxane, Fragrance, Polyglyceryl-3 Stearate/Isostearate/Dimer Dilinoleate Crosspolymer, Lauryl PEG-8 Dimethicone, Phenylisopropyl Dimethicone, Ascorbyl Palmitate, Methyl Dihydroabietate, Tocopheryl Acetate, Mineral Oil, Panthenol, Water, Aloe Barbadensis Leaf Extract.

26.     Plaintiffs have standing to represent members of the putative class because there is sufficient similarity between the specific product purchased by the Plaintiffs and the other Sunscreen Products not purchased by Plaintiffs. Specifically, each and every one of the Sunscreen Product (i) are marketed in substantially the same way – as "Sunscreen"— and (ii) fail to include labeling indicating to consumers that the Sunscreen Products may contain benzene as an active or inactive ingredient. Accordingly, the misleading effect of all of the Sunscreen Products' labels are substantially the same.

## CLASS ALLEGATIONS

27.      Plaintiffs brings this action on behalf of herself and all other similarly situated class members (the "Class") pursuant to Rule 23(a), (b)(2) and (b)(3) of the Federal Rules of Civil Procedure and seeks certification of the following class against Defendants for violations of Florida state laws and/or similar laws in other states:

### Multi-State Class Action

All consumers who purchased any lotion or spray Banana Boat Sunscreen Product in the United States of America and its territories

(excluding California) from June 17, 2017 to the present for personal use or consumption.

Excluded from the Class are individuals who allege personal bodily injury resulting from the use of Banana Boat Sunscreen Products. Also excluded from this Class are Defendants, any parent companies, subsidiaries, and/or affiliates, officers, directors, legal representatives, employees, co-conspirators, all governmental entities, and any judge, justice or judicial officer presiding over this matter.

28.     In the alternative, Plaintiffs brings this action on behalf of herself and all other similarly situated Florida consumers pursuant to Rule 23(a), (b)(2) and (b)(3) of the Federal Rules of Civil Procedure and seeks certification of the following class:

**<u>Florida Subclass:</u>**

All consumers who purchased any lotion or spray Banana Boat Sunscreen Product in the State of Florida from June 17, 2017 to the present for personal use or consumption.

Excluded from the Class are individuals who allege personal bodily injury resulting from the use of Banana Boat Sunscreen Products. Also excluded from this Class are Defendants, any parent companies, subsidiaries, and/or affiliates, officers, directors, legal representatives, employees, co-conspirators, all governmental entities, and any judge, justice or judicial officer presiding over this matter.

29.     The members of the Class are so numerous that joinder of all members of the Class is impracticable. Plaintiffs are informed and believe that the proposed Class contains thousands of purchasers of Defendants' Sunscreen Products who have been damaged by Defendants' conduct as alleged herein. The precise number of Class members is unknown to Plaintiffs at this time.

30.     Plaintiffs' claims are typical to those of all class members because members of the class are similarly injured through Defendants' uniform misconduct described above and were subject to Defendants' deceptive sunscreen claims that accompanied each and every

sunscreen product in the Banana Boat collection. Plaintiffs are advancing the same claims and legal theories on behalf of himself and all members of the Class.

31.     Plaintiffs' claims raise questions of law and fact common to all members of the Class, and they predominate over any questions affecting only individual Class members. The claims of Plaintiffs and all prospective Class members involve the same alleged defect. These common legal and factual questions include the following:

      (a)   whether Defendants' Sunscreen Products contained benzene;

      (b)   whether Defendants' omissions are true, or are misleading, or objectively reasonably likely to deceive;

      (c)   whether the alleged conduct constitutes violations of the laws asserted;

      (d)   whether Defendants' alleged conduct violates public policy;

      (e)   whether Defendants engaged in false or misleading advertising;

      (f)  whether Defendants were unjustly enriched as a result of their labeling, marketing, advertising and/or selling of the Sunscreen Products;

      (g)   whether Plaintiffs and the Class members are entitled to damages and/or restitution and the proper measure of that loss; and

      (h)   whether an injunction is necessary to prevent Defendants from continuing to market and sell defective and adulterated Sunscreen Products that contain benzene, a known human carcinogen.

32.     Plaintiffs and her counsel will fairly and adequately protect and represent the interests of each member of the class. Plaintiffs have retained counsel experienced in complex litigation and class actions. Plaintiffs' counsel has successfully litigated other class action cases similar to that here and have the resources and abilities to fully litigate and protect the interests

of the class. Plaintiffs intend to prosecute this claim vigorously. Plaintiffs have no adverse or antagonistic interests to those of the Class, nor are Plaintiffs subject to any unique defenses.

33.     A class action is superior to the other available methods for a fair and efficient adjudication of this controversy. The damages or other financial detriment suffered by the Plaintiffs and individual Class members is relatively small compared to the burden and expense that would be entailed by individual litigation of their claims against Defendants. It would thus be virtually impossible for Plaintiffs and Class members, on an individual basis, to obtain effective and meaningful redress for the wrongs done to them. Further, it is desirable to concentrate the litigation of the Class members' claims in one forum, as it will conserve party and judicial resources and facilitate the consistency of adjudications. Plaintiffs know of no difficulty that would be encountered in the management of this case that would preclude its maintenance as a class action.

34.     The Class also may be certified because Defendants have acted or refused to act on grounds applicable to the Class, thereby making appropriate final declaratory and/or injunctive relief with respect to the members of the Class as a whole.

35.     Plaintiffs seek preliminary and permanent injunctive and equitable relief on behalf of the entire Class, on grounds generally applicable to the entire Class, to enjoin and prevent Defendants from engaging in the acts described above, such as continuing to market and sell Sunscreen Products that may be adulterated with benzene, and requiring Defendants to provide a full refund of the purchase price of the Sunscreen Products to Plaintiffs and Class members.

36.     Unless a Class is certified, Defendants will retain monies received as a result of their conduct that were taken from Plaintiffs and the Class members. Unless a Class-wide

injunction is issued, Defendants will continue to commit the violations alleged and the members

of the Class and the general public will continue to be misled.

## FIRST CAUSE OF ACTION

## Violation of Florida's Deceptive and Unfair Trade Practices Act, Fla. Stat. §§ 501.201-213

### (In the Alternative, on Behalf of the Multi-State Class and

### Plaintiffs Zapatero and Hart and the Florida Subclass)

37.     Plaintiffs Zapatero and Hart incorporate by reference and re-allege each and every

allegation contained above, as though fully set forth herein.

38.     Plaintiffs Zapatero and Hart bring this claim individually on behalf of the Multi-

State Class or, in the alternative, on behalf of the Florida Subclass.

39.     The Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") renders

unlawful unfair methods of competition, unconscionable acts or practice, and unfair or deceptive

acts or practices in the conduct of any trade or commerce. § 501.204, Fla. Stat.

40.     Among other purposes, FDUTPA is intended "[t]o protect the consuming public

and legitimate business enterprises from those who engage in unfair methods of competition, or

unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce."

§ 501.202, Fla. Stat.

41.     As alleged herein, Plaintiffs have suffered injury in fact and lost money as a result

of Defendants' conduct because she purchased Sunscreen Products from Defendants in reliance

on Defendants' representation that the ingredients in their Sunscreen Products were safe and

effective and were not adulterated with benzene, a known human carcinogen.

42.     As alleged herein, Defendants' actions are deceptive and in clear violation of FDUTPA, entitling Plaintiffs and the Class to damages and relief under Fla. Stat. §§ 501.201-213.

Defendants have engaged, and continue to engage, in conduct that is likely to deceive members of the public. This conduct includes representing in their labels that their Sunscreen Products contain only the ingredients listed in the label, which is untrue, and failing to make any mention that the certain Sunscreen Products are adulterated with benzene, a known human carcinogen.

43.     Similarly, Defendants have engaged, and continue to engage, in deceptive, untrue, and misleading advertising by representing that their Sunscreen Products (1) "provide today's busy family with sun protection without worry when used and reapplied as directed,"[25] (2) offer "safe and effective sun protection,"[26] and (3) are "safe for [their] intended use based on the formulation, testing results, and the long history of safe consumer use."[27] Representatives of one or more Edgewell Defendants have further represented to consumers that "all Banana Boat products undergo rigorous testing to ensure they are appropriately labeled and meet all relevant health regulations, including SPF tests."[28] Such representations cannot be true, however, given that independent testing by Valisure has confirmed that certain of Defendants' Sunscreen Products contain a known (but undisclosed) human carcinogen (i.e. benzene). Defendants further market their Sunscreen Products specifically to parents, by offering a Kids and Baby portfolio of

---

[25] https://ir.edgewell.com/news-and-events/press-releases/2018/05-01-2018-130128066?sc_lang=en.
[26] https://ir.edgewell.com/news-and-events/press-releases/2018/05-01-2018-130128066?sc_lang=en.
[27] https://edgewell.com/wp-content/uploads/2016/08/92014320-BB-Dry-Oil-Spray-SPF-4.pdf.
[28] https://www.10news.com/news/national/dermatologists-say-these-sunscreen-ingredients-can-cause-blisters-and-burns-on-some-childrens-skin.

Sunscreen Products. These marketing efforts claim to "know families are interested in sunscreen without any extra ingredients like dyes or perfumes – but with the same trusted protection Banana Boat has always provided"[29]—all while failing to disclose to parents that products such as Banana Boat Spray Kids Max Protect & Play Sunscreen C-Spray SPF 100 (as tested by Valisure) contains the "extra ingredient" benzene.

44.    By committing the acts alleged above, Defendants have engaged in unconscionable, deceptive, or unfair acts or practices, which constitute unfair competition within the meaning of FDUTPA.[30]

45.    Defendants' conduct is substantially injurious to consumers. Consumers are purchasing and, as instructed in the label, "apply[ing] liberally" Defendants' Sunscreen Products without knowledge that there is a risk the Sunscreen Products may be adulterated with a human carcinogen. This conduct has caused, and continues to cause, substantial injury to consumers because consumers would not have paid for sunscreens potentially adulterated with benzene but for Defendants' false labeling, advertising, and promotion. Thus, Plaintiffs and the putative Class have been "aggrieved" (i.e. lost money) as required for FDUTPA standing, and such an injury is not outweighed by any countervailing benefits to consumers or competition.

46.    Indeed, no benefit to consumers or competition results from Defendants' conduct. Since consumers reasonably rely on Defendants' representation of the ingredients contained in their Sunscreen Products' labels and injury resulted from ordinary use of the Sunscreen Products, consumers could not have reasonably avoided such injury.

---

[29] https://ir.edgewell.com/news-and-events/press-releases/2018/05-01-2018-130128066?sc_lang=en.
[30] Defendants' conduct violates Section 5 of the Federal Trade Commission "("FTC") Act, 15 U.S.C. § 45, which prohibits unfair methods of competition and unfair or deceptive acts or practices in or affecting commerce.

47.     Further, Defendants' conduct is ongoing and continuing, such that prospective injunctive relief is necessary. Plaintiffs are long-time user of Defendants' Sunscreen Products, and they desire to purchase Defendants' Sunscreen Products in the future if they can be assured that the Sunscreen Products are unadulterated and meet the advertising claims. Absent injunctive relief, Defendants may continue to advertise, promote and sell adulterated Sunscreen Products that deceive the public as to their ingredients and safety. Plaintiffs are thus likely to again be wronged in a similar way. For example, if Plaintiffs' encounter Defendants' Sunscreen Products in the future and there is a risk those products still contain benzene, Plaintiffs may mistakenly rely on the product's label to believe that Defendants eliminated benzene when they did not.

48.     Florida Statutes, Section 501.204, makes unfair and/or deceptive trade practices in the conduct of any trade or commerce illegal.

49.     Florida Statutes, Section 501.211, creates a private right of action for individuals who are aggrieved by an unfair and/or deceptive trade practice by another person.

50.     Florida Statutes, Section 501.2105, provides that the prevailing party in litigation arising from a cause of action pursuant to Chapter 501 shall be entitled to recover attorney's fees within the limitations set forth therein form the non-prevailing party.

51.     Florida Statutes, Section 501.213, provides that any remedies available under Chapter 501 are in addition to any other remedies otherwise available for the same conduct under state or local law.

52.     Florida Statutes, Section 501.203 (3)(c), states that a person has violated the FDUTPA if he violates "any law, statute, rule, regulation, or ordinance which proscribes unfair, deceptive, or unconscionable acts or practices."

53.     Defendants are engaged in the practice of manufacturing, marketing, distributing, selling and otherwise placing into the stream of commerce Sunscreen Products which constitutes trade and commerce as defined by Sections 501.203(8) Fla. Stat., and is therefore subject to FDUPTA.

54.     As a result of Defendants' unfair and deceptive trade practices, Plaintiffs and the putative Class s are entitled to an award of attorney's fees pursuant to FDUTPA, Florida Statutes, Section 501.2105, if she prevails.

55.     Wherefore, Plaintiffs pray for judgement against Defendants, as set forth hereafter. Defendants' conduct with respect to the labeling, advertising, marketing, and sale of their Sunscreen Products is unfair because Defendant's conduct was immoral, unethical, unscrupulous, or substantially injurious to consumers and the utility of its conduct, if any, does not outweigh the gravity of the harm to its victims.

56.     In accordance with FDUTPA,[31] Plaintiffs seek an order enjoining Defendants from continuing to conduct business through fraudulent or unlawful acts and practices and to commence a corrective advertising campaign. Defendants' conduct is ongoing and continuing, such that prospective injunctive relief is necessary.

57.     On behalf of Plaintiffs and the putative Class, Plaintiffs also seek an order entitling them to recover all monies spent on the Defendants' Sunscreen Products, which were acquired through acts of fraudulent, unfair, or unlawful competition.[32] In addition, the measure of restitution should be full refund of the purchase price insofar as the Sunscreen Products and their associated labels are worthless. But for Defendants' misrepresentations and omissions,

---

[31] Section 501.211(1) allows "anyone aggrieved by a violation of" FDUTPA to seek declaratory or injunctive relief. Fla. Stat. §501.211.
[32] Section 501.211(2) provides that "a person who has suffered a loss as a result of a [FDUTPA] violation ... may recover actual damages . . . ."

Plaintiffs would have paid nothing for Sunscreen Products that have a risk of containing a known human carcinogen (i.e. benzene). Indeed, there is no discernible "market" for an over-the-counter sunscreen product that may be adulterated with a known human carcinogen. As recognized by the WHO, "[b]enzene is carcinogenic to humans, and no safe level of benzene can be recommended."[33] As a result, the Defendants' Sunscreen Products are rendered valueless.

58.     Wherefore, Plaintiffs and members of the Class are entitled to injunctive and equitable relief, and a full refund in the amount they spent on the Defendants' Sunscreen Products.

## SECOND CAUSE OF ACTION

### Unjust Enrichment

**(In the Alternative, on Behalf of the Multi-State Class and Plaintiffs Zapatero and Hart and the Florida Subclass)**

59.     Plaintiffs incorporate by reference and re-allege each and every allegation contained above, as though fully set forth herein.

60.     As a result of Defendants' wrongful and deceptive conduct alleged herein, Defendants knowingly and voluntarily accepted and retained wrongful benefits in the form of money paid by the Plaintiffs and members of the Class when they purchased the Sunscreen Products.

61.     In so doing, Defendants acted with conscious disregard for the rights of Plaintiffs and members of the Class.

---

[33] https://www.who.int/ipcs/features/benzene.pdf.

62.     As a result of Defendants' wrongful conduct as alleged herein, Defendants have been unjustly enriched at the expense of, and to the detriment of, Plaintiffs and members of the Class.

63.     Defendants' unjust enrichment is traceable to, and resulted directly and proximately from, the conduct alleged herein.

64.     Under the common law doctrine of unjust enrichment, it is inequitable for Defendants to be permitted to retain the benefits it received, and is still receiving, without justification, from the false and deceptive labeling and marketing of the Sunscreen Products to Plaintiffs and members of the Class.

65.     Defendants' retention of such funds under circumstances making it inequitable to do so constitutes unjust enrichment.

66.     The financial benefits derived by Defendants rightfully belong to Plaintiffs and members of the Class.

67.     Defendants should be compelled to disgorge in a common fund for the benefit of Plaintiffs and members of the Class all wrongful or inequitable proceeds received by them.

68.     Finally, Plaintiffs and members of the Class may assert an unjust enrichment claim even though a remedy at law may otherwise exist.[34]

### THIRD CAUSE OF ACTION

### Negligent Misrepresentation/Omission

---

[34] *See State Farm Mut. Auto Ins. Co. v. Physicians Injury Care Ctr.,* 427 F. App'x 714, 723 (11th Cir. 2011), *rev'd on other grounds*, 824 F.3d 1311 (The general rule that "equitable remedies are not available under Florida law when adequate legal remedies exist . . . does not apply to unjust enrichment claims."); *see also Morris v. ADT Sec. Services*, 580 F.Supp.2d 1305, 1312-13 (S.D. Fla. 2008); *In re Monat Hair Prods. Mktg., Sales Prac., and Prods. Liab. Litig*., 2019 WL 5423457, at *5 (S.D. Fla. Oct. 23, 2019); *Garcia v. Clarins USA, Inc.*, 2014 WL 11997812, at *5 (S.D. Fla. Sept. 5, 2014); *Goldberg v. Chong,* 2007 WL 2028792 at *9 (S.D. Fla. July 11, 2007).

**(In the Alternative, on Behalf of the Multi-State Class and**

**Plaintiffs Zapatero and Hart and the Florida Subclass)**

69.     Plaintiffs incorporate by reference and re-allege each and every allegation contained above, as though fully set forth herein.

70.     Through their labeling and advertising, Defendants made representations to the Plaintiffs and the Class members concerning the active and inactive ingredients in their Sunscreen Products.

71.     Defendants have a duty to provide accurate information to consumers with respect to the ingredients identified in their Sunscreen Products as detailed above.

72.     Defendants failed to fulfill their duty to accurately disclose in its labeling and advertising that the Sunscreen Products contained benzene.

73.     Additionally, Defendants have a duty to not make false representations with respect to their Sunscreen Products.

74.     Defendants failed to fulfill their duty when they made false representations regarding the quality and safety of the Sunscreen Products as detailed above.

75.     Such failures to disclose on the part of Defendants amounts to negligent omission and the representations regarding the quality and safety of the product amount to negligent misrepresentation.

76.     Plaintiffs and the other members of the Class reasonably relied upon such representations and omissions to their detriment.

77.     By reason thereof, Plaintiffs and the other Class members have suffered damages in an amount to be proven at trial.

## FOURTH CAUSE OF ACTION

### Breach of Express Warranty

**(In the Alternative, on Behalf of the Multi-State Class and**

**Plaintiffs Zapatero and Hart and the Florida Subclass)**

78.     Plaintiffs incorporate by reference and re-allege each and every allegation contained above, as though fully set forth herein.

79.     As detailed above, Defendants, through their written literature, packaging and labeling, and written and media advertisement, expressly warranted that the Sunscreen Products were safe and fit for the purposes intended, that they were of merchantable quality, and that they did not pose dangerous health risks.

80.     Moreover, by its very terms, the Sunscreen Products' labeling (specifically in the "Sun *Protection* Measures")[35] represents that the regular use of broad spectrum sunscreen is "protective" and that its use can "decrease the risk" of skin cancer and early skin aging. Such statements constitute an affirmation of fact or promise or a description of the product as being safe and not posing a dangerous health risk. Defendants breached this express warranty because their Sunscreen Products are not safe. To the contrary, the Sunscreen Products pose a dangerous health risk because they contain benzene—a chemical that actually *increases* the risk of cancer with exposure occuring either through inhalation or skin absorption, among other ways.

81.     Plaintiffs and the Class read and relied on these express warranties provided by Defendants in the packaging and written advertisements.

---

[35] Specifically, the "Directions" section of Banana Boat's Ultra Sport SPF 50 Sunscreen Product states: "**Sun Protection Measures**: Spending time in the sun increases your risk of skin cancer and early skin aging. To decrease this risk, regularly use a sunscreen with a Broad Spectrum SPF value of 15 or higher . . . ." (emphasis in original).

82.     Defendants breached their express warranties because the Sunscreen Products are defective and not reasonably safe for their intended use.

83.     Defendants knew or should have known that the Sunscreen Products did not conform to their express warranties and representations and that, in fact, the Sunscreen Products are not safe and pose serious health risks because they contain benzene.

84.     Plaintiffs and the Class have suffered harm on account of Defendants' breach of their express warranty regarding the fitness for use and safety of the Sunscreen Products and are entitled to damages to be determined at trial.

**FIFTH CAUSE OF ACTION**

**Breach of Implied Warranty**

**(In the Alternative, on Behalf of the Multi-State Class and Plaintiffs Zapatero and Hart and the Florida Subclass)**

85.     Plaintiffs incorporate by reference and re-allege each and every allegation contained above, as though fully set forth herein.

86.     Because the Sunscreen Products contained benzene, they were not of the same quality as those generally acceptable in the trade and were not fit for the ordinary purposes for which such Sunscreen Products are used.

87.     Plaintiffs and members of the Class purchased the Sunscreen Products in reliance upon Defendants' skill and judgment and the implied warranties of fitness for the purpose.

88.     The Sunscreen Products were not altered by Plaintiffs or members of the Class.

89.     Plaintiffs and members of the Class were foreseeable users of the Sunscreen Products.

90.     Plaintiffs and members of the Class used the Sunscreen Products in the manner intended.

91.     As alleged, the Sunscreen Products were not adequately labeled and did not disclose that they contain benzene.

92.     The Sunscreen Products did not measure up to the promises or facts stated in the written literature, media advertisement and communications by and from Defendant.

93.     Defendant impliedly warranted that the Sunscreen Products were merchantable, fit and safe for ordinary use.

94.     Defendant further impliedly warranted that the Sunscreen Products were fit for the particular purposes for which they were intended and sold.

95.     Contrary to these implied warranties, the Sunscreen Products were defective, unmerchantable, and unfit for their ordinary use when sold, and unfit for the particular purpose for which they were sold.

96.     By reason thereof, Plaintiffs and the other Class members have suffered damages in an amount to be proven at trial.

## SIXTH CAUSE OF ACTION

### Strict Product Liability – Failure to Warn

**(In the Alternative, on Behalf of the Multi-State Class and**

**Plaintiffs Zapatero and Hart and the Florida Subclass)**

97.     Plaintiffs incorporate by reference and re-allege each and every allegation contained above, as though fully set forth herein.

98.     Defendants knew or should have known that their Sunscreen Products contained benzene, which is a known carcinogen.

99.     Defendants had a duty to warn Plaintiffs and the Class about the presence of benzene in their Sunscreen Products.

100.     In addition, Defendants had a duty to warn Plaintiffs and the Class about the dangers of the presence of benzene in their Sunscreen Products.

101.     Defendants knew that the risk of exposure to benzene from use of its products was not readily recognizable to an ordinary consumer and that consumers would not inspect the product for benzene content.

102.     Defendants did not warn Plaintiffs and the Class that the Sunscreen Products contained benzene or about the dangers of the presence of benzene in their Sunscreen Products.

103.     Plaintiffs and the Class have suffered damages by purchasing Sunscreen Products in a manner promoted by Defendants, and in a manner that was reasonably foreseeable by Defendants, because benzene is a known carcinogen that is absorbed, among other ways, through inhalation and the skin. Plaintiffs and the members of the Class would not have purchased Defendants' Sunscreen Products had they known they contained benzene.

104.     Plaintiffs and the Class were justified in their reliance on Defendant's labeling and advertising of the product for use as sunscreen.

105.     Plaintiffs and the Class have suffered damages in an amount to be proven at trial.

### SEVENTH CAUSE OF ACTION

### Strict Product Liability – Manufacturing Defect

### (In the Alternative, on Behalf of the Multi-State Class and

### Plaintiffs Zapatero and Hart and the Florida Subclass)

106.     Plaintiffs incorporate by reference and re-allege each and every allegation contained above, as though fully set forth herein.

107.    The Sunscreen Products contained a manufacturing defect when they left the possession of Defendants. Specifically, the Sunscreen Products differ from Defendants' intended result or from other lots of the same product line because they contain benzene.

108.    Plaintiffs used the Sunscreen Products in a way that was reasonably foreseeable to Defendants.

109.    As a result of the defects in the manufacture of the Sunscreen Products, Plaintiffs and the Class suffered damages in an amount to be proven at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves and on behalf of all others similarly situated, pray for judgment against the Defendants as to each and every count, including:

A.    An order declaring this action to be a proper class action, appointing Plaintiffs and their counsel to represent the Class, and requiring Defendants to bear the costs of class notice;

B.    An order enjoining Defendants from selling the Sunscreen Products;

C.    An order enjoining Defendants from suggesting or implying that they are safe and effective for human application;

D.    An order requiring Defendants to engage in a corrective advertising campaign and engage in any further necessary affirmative injunctive relief, such as recalling existing Sunscreen Products;

E.    An order awarding declaratory relief, and any further retrospective or prospective injunctive relief permitted by law or equity, including enjoining Defendants from continuing the unlawful practices alleged herein, and injunctive relief to remedy Defendants' past conduct;

F.      An order requiring Defendants to pay restitution/damages to restore all funds acquired by means of any act or practice declared by this Court to be an unlawful, unfair, or fraudulent business act or practice, untrue or misleading advertising in violation of the FDUTPA, plus pre- and post-judgment interest thereon;

G.      An order requiring Defendant to disgorge any ill-gotten benefits received from Plaintiffs and members of the Class as a result of any wrongful or unlawful act or practice;

H.      An order requiring Defendant to pay all actual and statutory damages permitted under the counts alleged herein;

I.      An order awarding attorneys' fees and costs to Plaintiffs and the Class; and

J.      An order providing for all other such equitable relief as may be just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs demand a trial by jury on all issues so triable.

DATED: July 22, 2021.

By: /s/*R. Jason Richards*
    R. Jason Richards
    AYLSTOCK, WITKIN, KREIS & OVERHOLTZ, PLLC
    R. JASON RICHARDS (FL Bar # 18207)
    17 East Main Street, Suite 200
    Pensacola, FL 32502
    Telephone: 850-202-1010
    Facsimile: 850-916-7449
    E-mail: jrichards@awkolaw.com
    *Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on July 22, 2021, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

By:  /s/*R. Jason Richards*
R. Jason Richards