**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**Miami Division**

**CASE NO.: 1:21-cv-22232-ALTONAGA/TORRES**

**MARIA ZAPATERO and ADAM HART,**
**individually, and on behalf of themselves**
**and all others similarly situated,**
                    **Plaintiff,**
**v.**
**ENERGIZER HOLDINGS, INC.,**
**EDGEWELL PERSONAL CARE**
**COMPANY, EDGEWELL PERSONAL**
**CARE BRANDS, LLC, EDGEWELL**
**PERSONAL CARE, LLC, PLAYTEX**
**PRODUCTS, INC., SUN**
**PHARMACEUTICALS, LLC**
                    **Defendants.**
_____/

**DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED CLASS**
**ACTION COMPLAINT AND INCORPORATED MEMORANDUM OF LAW,**
**AND REQUEST FOR HEARING**

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................................ 1

ARGUMENT ...................................................................................................................... 3

I.      PLAINTIFFS LACK ARTICLE III STANDING REQUIRING DISMISSAL. ................ 4

      A.     Plaintiffs fail to allege an injury-in-fact. ................................................... 5

           i.     Plaintiffs fail to allege a particularized injury ............................... 5

           ii.    Plaintiffs' alleged economic injury cannot be premised on a hypothetical and speculative risk of harm. .......................... 6

II.     PLAINTIFFS' CLAIMS ARE SUBJECT TO THE FDA'S PRIMARY JURISDICTION AND FURTHER PREEMPTED BY FEDERAL LAW ...................... 7

      A.     The products are subject to and in compliance with the 1999 sunscreen monograph. ................................................................. 7

           i.     The Products are not misbranded or adulterated because benzene is not an ingredient in the Products .......................... 8

           ii.    The Products are in compliance with the FDA standard that allows up to 2 ppm of benzene in the Products. ......................... 9

      B.     PLAINTIFFS' CLAIMS ARE PREEMPTED ........................................... 9

           i.     Plaintiffs' claims are expressly preempted. ............................... 10

           ii.    Plaintiffs' claims are also impliedly preempted ......................... 12

           iii.   Plaintiffs' claims are barred as private enforcement actions. ..................... 12

      C.     PLAINTIFFS' CLAIMS ARE SUBJECT TO THE FDA'S PRIMARY JURISDICTION. ...................................................................... 13

III.    PLAINTIFFS FAIL TO STATE A CLAIM. .............................................................. 15

      A.     PLAINTIFFS' CLAIMS FAIL TO MEET THE REASONABLE CONSUMER STANDARD. ............................................................. 15

           i.     Plaintiffs' omission theory fails to satisfy the reasonable consumer standard. ..................................................... 16

           ii.    Plaintiffs' misrepresentation theories fail to satisfy the reasonable consumer standard. ..................................... 17

                a.    The May 5, 2018 Press Release for Simply Protect™ would not mislead a reasonable consumer. .................................. 17

                b.    The March 2, 2016 Safety Data Sheet would not mislead a reasonable consumer. ............................................ 18

                c.    The July 21, 2019 article from Florida would not mislead a reasonable consumer ............................................. 19

i

B.     PLAINTIFFS FAIL TO MEET RULE 9(B)'S HEIGHTENED PLEADING STANDARD............................................................................................20

C.     PLAINTIFFS' EQUITABLE CLAIMS FOR UNJUST ENRICHMENT AND REQUESTS FOR EQUITABLE RELIEF FAIL BECAUSE THEY FAIL TO ALLEGE THEY LACK AN ADEQUATE REMEDY AT LAW.........................21

D.     PLAINTIFFS' TORT CLAIMS ARE ALSO BARRED BY THE ECONOMIC LOSS DOCTRINE............................................................................................22

E.     PLAINTIFFS' EXPRESS WARRANTY CLAIM FAILS BECAUSE DEFENDANTS DID NOT PROMISE WHAT PLAINTIFFS ALLEGE............23

F.     PLAINTIFFS' DEFECT-BASED CLAIMS FAIL BECAUSE PLAINTIFFS HAVE FAILED TO ALLEGE THE PRODUCTS ARE UNREASONABLY DANGEROUS.....................................................................................................23

**CONCLUSION** ............................................................................................... **24**

**REQUEST FOR HEARING** ........................................................................... **24**

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Am. Honda Motor Co., Inc. v. Motorcycle Info. Network, Inc.*
  390 F. Supp. 2d 1170 (M.D. Fla. 2005) ...................................................................21

*Annunziato v. eMachines, Inc.*,
  402 F. Supp. 2d 1133 (C.D. Cal. 2005) ..................................................................20

*Arcure v. Kellogg Company*,
  No. 2:10-CV-192, 2011 WL 13294631 (M.D. Fla. Mar. 29, 2011) ..........................6

*Arizona v. United States*,
  567 U.S. 387 (2012) ...................................................................................................9

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) .................................................................................................15

*Axon v. Citrus World, Inc.*,
  354 F. Supp. 3d 170 (E.D.N.Y. 2018), *aff'd sub nom. Axon v. Florida's Nat.
  Growers, Inc.*, 813 F. App'x 701 (2d Cir. 2020) ....................................................16

*Azoulai v. BMW of N. Am. LLC*,
  No. 16-CV-00589-BLF, 2017 WL 1354781 (N.D. Cal. Apr. 13, 2017) ..................20

*Begualg Inv. Management Inc. v. Four Seasons Hotel Ltd.*,
  No. 10-22153, 2011 WL 4434891 (S.D. Fla. Sep. 23, 2011) (Martinez, J.)...........20

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007).................................................................................................15

*Bowen v. Energizer Holdings, Inc., et al.*,
  No. 2:21-cv-04356 ...................................................................................................14

*Bowleg v. Bowe*,
  502 So. 2d 71 (Fla. Dist. Ct. App.  1987) ...............................................................22

*Bryon Jackson v. Anheuser-Busch Inbev SA/NV, LLC*,
  No. 20-CV-23392, 2021 WL 3666312 (S.D. Fla. Aug. 18, 2021) ...........................5

*Bush v. WellPet, LLC*,
  No. CV 21-10059-RGS, 2021 WL 1408118 (D. Mass. Apr. 14, 2021) ..................16

*Capital Cities Cable, Inc. v. Crisp*,
  467 U.S. 691 (1984).................................................................................................12

iii

*Cipollone v. Liggett Group, Inc.*,
 505 U.S. 504 (1992)..................................................................................................10

*Coffelt v. Kroger Co.*,
 No. 16-1471 JGB, 2018 WL 6004543 (C.D. Cal. Aug. 17, 2018) ............................5

*Corsello v. Lincare, Inc.*
 428 F.3d 1008 (11th Cir. 2005) ...............................................................................21

*Doss v. General Mills, Inc.*,
 816 Fed. App'x. 312 (11th Cir. 2020), *aff'd,* 816 F. App'x 312 (11th Cir.
 2020) ..............................................................................................................5, 15, 16

*Dunham-Bush, Inc. v. Thermo-Air Serv., Inc.*,
 351 So. 2d 351 (Fla. Dist. Ct. App. 1977) ..............................................................23

*Durham v. Bus. Mgmt. Assoc.*,
 847 F.2d 1505 (11th Cir. 1988) ...............................................................................21

*Eckler v. Neutrogena Corp.*,
 238 Cal. App. 4th 433 (2015) ..................................................................................10

*Ellis v. C.R. Bard, Inc.*,
 311 F.3d 1272 (11th Cir. 2002) ...............................................................................12

*In re Epogen & Aranesp Off-Label Mktg. & Sales Practices Litig.*,
 590 F. Supp. 2d 1282 (C.D. Cal. 2009) ...................................................................12

*Far East Conference v. United States*,
 342 U.S. 570 (1952)..................................................................................................13

*Fin. Sec. Assurance, Inc. v. Stephens, Inc.*,
 500 F.3d 1276 (11th Cir. 2007) .................................................................................2

*Florida Power & Light Co. v. Westinghouse Elec. Corp.*,
 510 So. 2d 899 (Fla. 1987)..................................................................................22, 23

*Freightliner Corp. v. Myrick*,
 514 U.S. 280 (1995)..................................................................................................12

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.*,
 528 U.S. 167 (2000)....................................................................................................5

*Gallardo by and through Vassallo v. Dudek*,
 963 F.3d 1167 (11th Cir. 2020) ...............................................................................10

*In re Gen. Mills Glyphosate Litig.*,
 No. CV 16-2869, 2017 WL 2983877 (D. Minn. July 12, 2017)..............................16

*Gile v. Optical Radiation Corp.*,
    22 F.3d 540 (3d Cir. 1994), *cert. denied*, 513 U.S. 965 (1994) ...............................................12

*Green v. PepsiCo, Inc.*,
    No. 18-62011, 2019 WL 8810364 (S.D. Fla. Apr. 12, 2019) ......................................................6

*Greenfield v. Yucatan Foods*,
    18 F. Supp. 3d 1371 (S.D. Fla. May 7, 2014) .........................................................................13

*Hauser v. Steward Melbourne Hosp., Inc.*,
    No. 6:19-CV-1150, 2020 WL 917259 (M.D. Fla. Feb. 11, 2020) ...........................................11

*Hawyuan Yu v. Dr. Pepper Snapple Grp., Inc.*,
    No. 18-CV-06664-BLF, 2020 WL 5910071 (N.D. Cal. Oct. 6, 2020) ....................................16

*In Gaminde v. Lang Pharma Nutrition, Inc.*,
    No. 1:18-cv-300, 2019 WL 1338724 (N.D.N.Y. Mar. 25, 2019) ...............................................6

*Jovine v. Abbott Laboratories, Inc.*,
    795 F. Supp. 2d 1331 (S.D. Fla. 2011) ...................................................................................22

*Kelly v. Harris*,
    331 F.3d 817 (11th Cir. 2003) .................................................................................................5

*Koutsouradis v. Delta Air Lines, Inc.*,
    427 F.3d 1339 (11th Cir. 2005) .............................................................................................10

*Llado-Carreno v. Guidant Corp.*,
    No. 09-CV-20971, 2011 WL 705403 (S.D. Fla. Feb 22, 2011) (Altonaga, J.) ......................20

*Lujan v. Defs. of Wildlife*,
    504 U.S. 555 (1992) ............................................................................................................4, 5

*Millennium Commc'ns, Inc. v. Office of the Att'y Gen.*,
    761 So. 2d 1256 (Fla. Dist. Ct. App.  2000) ...........................................................................15

*Monsanto Co. v. Geertson Seed Farms*,
    130 S. Ct. 2743 (2010) ............................................................................................................4

*National Alliance for Mentally Ill, St. Johns Inc. v. Board of County Com'rs of St.
    Johns County*,
    376 F.3d 1292 (11th Cir. 2004) ...............................................................................................7

*Parks v. Ainsworth Pet Nutrition, LLC*,
    377 F. Supp. 3d 241 (S.D.N.Y. 2019) ....................................................................................16

*PB Prop. Mgmt. v. Goodman Mfg. Co., L.P.*,
    No. 3:12-cv-1366-J-20JBT, 2013 U.S. Dist. LEXIS 200218 (M.D. Fla. Aug. 27, 2013) ........................................................................................................22

*Pels v. Keurig Dr. Pepper, Inc.*,
    No. 19-CV-03052-SI, 2019 WL 5813422 (N.D. Cal. Nov. 7, 2019) ......................5

*Perez v. Nidek Co.*,
    711 F.3d 1109 (9th Cir. 2013) ...............................................................................13

*Perret v. Wyndham Vacation Resorts, Inc.*,
    846 F. Supp. 2d 1327 (S.D. Fla. 2012) (Seitz, J.) .................................................20

*Snyder v. Green Roads of Florida LLC*,
    430 F. Supp. 3d 1297 (S.D. Fla. Jan. 3, 2020) ......................................................13

*Soja v. Medtronic, Inc.*,
    No. 2:19-CV-00219, 2019 WL 2391609 (E.D. Cal. June 6, 2019) .......................13

*Spokeo, Inc. v. Robins*,
    136 S. Ct. 1540 (2016) .............................................................................................5

*Stansfield v. Minute Maid Co.*,
    124 F. Supp. 3d 1226 (N.D. Fla. 2015) ......................................................10, 12, 13

*Tiara Condominium Ass'n, Inc. v. Marsh & McLennan Companies, Inc.*,
    110 So. 3d 399 (Fla. 2013) ....................................................................................22

*Toca v. Tutco*,
    LLC, 430 F. Supp. 3d 1313 (S.D. Fla. 2020) ...................................................20, 23

*United States. v. W. Pac. R. R. Co.*,
    352 U.S. 59 (1956) .................................................................................................13

*USA Nutraceuticals Group, Inc. v. BPI Sports, LLC*,
    No. 15-CIV-80352, 2016 WL 4254257 (S.D. Fla. Feb. 16, 2016) ........................21

*Wallace v. ConAgra Foods, Inc.*,
    747 F.3d 1025 (8th Cir. 2014) .................................................................................5

*West v. Caterpillar Tractor Co.*,
    336 So. 2d 80 (Fla. 1976) .......................................................................................24

*Whitmore v. Arkansas*,
    495 U.S. 149 (1990) .................................................................................................5

*Wolicki-Gables v. Doctors Same Day Surgery Center. Ltd.*,
    216 So. 3d 665 (Fla. Ed DCA 2017) ......................................................................13

*Ziemba v. Cascade Int'l, Inc.*,
    256 F.3d 1193 (11th Cir. 2001) ..................................................................21

*Zlotnick v. Premier Sales Grp., Inc.*,
    480 F.3d 1281 (11th Cir. 2007) ..................................................................15

**Constitution**

U.S. const. art. VI, cl. 2 ..............................................................................10

**Statutes**

21 U.S.C.A. § 337 ......................................................................................12

U.S.C. § 352(ee) ..........................................................................................8

21 U.S.C. §§ 351, 352.21 ..........................................................................2, 7

21 U.S.C. § 352(e) ......................................................................................8

21 U.S.C. § 355h(a) ....................................................................................8

21 U.S.C. § 379r(a) ....................................................................................10

CARES Act Section 3854 ............................................................................14

FDCA Section 379r ......................................................................................10

FDCA Section 501 ......................................................................................13

FDCA Section 502 ......................................................................................13

Florida's Deceptive and Unfair Trade Practices Act, Fla. Stat. §§ 501.201-213 ..........................3

Pub.L. 116-136, Div. A, Title III, § 3854(c), Mar. 27, 2020, 134 Stat. 456..................14

**Regulations**

21 C.F.R. 201.66 ..........................................................................................11

21 C.F.R. 201.66(c) ....................................................................................11

21 C.F.R. 330.1 ..........................................................................................8

21 C.F.R. § 10.30(e) ..................................................................................14

21 C.F.R. § 201, *et seq.*..........................................................................2, 8

21 C.F.R. § 201.66 ....................................................................................8, 11

21 C.F.R. § 201.66(a) .................................................................................................11

21 C.F.R. § 201.66(c) ...........................................................................................8, 11, 12

21 C.F.R. § 201.66(g) .................................................................................................11

21 C.F.R. § 201.237 ....................................................................................................11

21 C.F.R. § 201.237(c), (f) ..........................................................................................11

21 C.F.R. § 201.327 ......................................................................................................8

21 C.F.R. § 210.3 ................................................................................................8, 9, 11

21 C.F.R. § 330.1 ...........................................................................................8, 11, 12

21 CFR § 201.237(d) ..................................................................................................12

FED. R. CIV. P. 8 .........................................................................................................15

FED. R. CIV. P. 9(b) ...........................................................................................2, 20, 21

FED. R. CIV. P. 12(b)(1) ...............................................................................................4

FED. R. CIV. P. 12(b)(6) .............................................................................................15

International Conference on Harmonisation guidance for industry Q3C Impurities:
    Residual Solvents (updated April 22, 2021), accessible at
    https://database.ich.org/sites/default/files/ICH_Q3C-
    R8_Guideline_Step4_2021_0422_1.pdf  ("ICH Q3C"). 9Part 352 of Title 21, Code of Federal
    Regulations, as published in the 1999 Sunscreen Drug Products For Over-
    The-Counter Human Use; Final Monograph (64 FR 27666 at 27687) (1999
    Sunscreen Monograph). ...................................................................................10

*Residual Solvents in Drug Products Marketed in the United States*  FDA, (2009)
    at n 2, accessible at https://www.fda.gov/media/70928/download ..........................9

USP General Chapter 467 Residual Solvents, accessible at
    https://www.uspnf.com/sites/default/files/usp_pdf/EN/USPNF/generalChapter
    467Current.pdf ("General Chapter 467"); ...............................................................9

**Other Authorites**

J. Callaway*, Dermatologists say these sunscreen ingredients can cause blisters
and burns on some children's skin* (initially published June 21, 2019),
accessible at https://www.10news.com/news/national/dermatologists-say-
these-sunscreen-ingredients-can-cause-blisters-and-burns-on-some-childrens-
skin)...................................................................................................................19

*Over-the-Counter (OTC) Drug Monograph Process*, FDA (September 3, 2020)
available at https://www.fda.gov/drugs/over-counter-otc-drug-monograph-
process (last visited on August 27, 2021). ........................................................8

*Press Release for Simply Protect™*, EDGEWELL (May 5, 2018) (accessible at
https://ir.edgewell.com/news-and-events/press-releases/2018/05-01-2018-
130128066?sc%20_lang=en).......................................................................17,28

*Safety Data Sheet,* EDGEWELL PERSONAL CARE, LLC (March 2, 2016)
(https://edgewell.com/wp-content/uploads/2016/08/92014320-BB-Dry-Oil-
Spray-SPF-4.pdf). ....................................................................4, 18, 19, 21

*Valisure's Citizen Petition on Benzene in Sunscreen and After-sun Care Products*,
VALISURE, LLC, May 24, 2021, https://www.valisure.com/wp-
content/uploads/Valisure-Citizen-Petition-on-Benzene-in-Sunscreen-and-
After-sun-Care-Products-v9.7.pdf .................................................... Passim

*Valisure's Citizen Petition on Benzene in Sunscreen and After-sun Care Products
Attachment A*, VALISURE, LLC, May 24, 2021, Attachment A
https://www.valisure.com/wp-content/uploads/Attachment-A-Table-5-of-
Valisure-FDA-Citizen-Petition-on-Sunscreen-v2.pdf .................................... Passim

Defendants Energizer Holdings, Inc., Edgewell Personal Care Company, Edgewell Personal Care Brands, LLC, Edgewell Personal Care, LLC, Playtex Products, LLC, and Sun Pharmaceuticals, LLC (together, "Defendants") respectfully submit this Motion to Dismiss the putative First Amended Class Action Complaint ("FAC") (Dkt. #15) filed by Plaintiffs Maria Zapatero and Adam Hart (together, "Plaintiffs") pursuant to Federal Rules of Civil Procedure 8, 9(b), 12(b)(1), and 12(b)(6). For all of the reasons set forth below in Defendants' Memorandum of Law in Support of Defendants' Motion to Dismiss, this Court should dismiss Plaintiffs' FAC with prejudice because the defects in Plaintiffs' FAC – including that Plaintiffs lack standing, Plaintiffs' claims are preempted by federal law, the FDA has primary jurisdiction, Plaintiffs fail to satisfy the reasonable consumer standard, and Plaintiffs' further failure to state a claim for relief – are fatal to Plaintiffs' claims.

## INTRODUCTION

Plaintiffs allege Defendants[1] fraudulently marketed their Banana Boat® sunscreen products via advertising and product labels.[2] (the "Products" are defined in fn. 2). Plaintiffs claim Defendants failed to disclose trace amounts of benzene in the Products. *See* FAC ¶¶ 24, 25. Plaintiffs base their claims solely on testing purportedly performed by a third-party pharmacy, Valisure, and the citizen petition Valisure filed with the Food and Drug Administration ("FDA"). *See* FAC ¶¶ 14, 14(sic).[3]   Third-party Valisure alleges that some of the Products contain trace

---

[1] Not all Defendants are involved in the manufacture and sale of the products at issue. Defendants reserve the right to challenge, if necessary, the real party in interest.

[2] Plaintiffs identify the following Banana Boat® brand sunscreens as the "Products:" Deep Tanning Dry Oil Clear Sunscreen Spray SPF 4; Kids Max Protect & Play™ Sunscreen C-Spray SPF 100; Kids Mineral Based Sunscreen Lotion SPF 50+; Kids Sport Sunscreen Lotion Spray SPF 50; Protective Dry Oil Clear Sunscreen Spray with Coconut Oil SPF 15; Simply Protect™ Kids Sunscreen Spray SPF 50+; Simply Protect™ Sensitive Mineral Enriched Sunscreen Lotion Spray SPF 50; Ultra Defense® Ultra Mist® Clear Sunscreen Spray SPF 100; Ultra Sport™ Clear Sunscreen Spray SPF 100; Ultra Sport™ Sunscreen Lotion SPF 100; Ultra Sport™ Clear Sunscreen Spray SPF 30; and Ultra Sport™ Clear Sunscreen Spray SPF 50 (hereinafter, the "Products"). FAC ¶ 13.

[3] *Valisure's Citizen Petition on Benzene in Sunscreen and After-sun Care Products*, VALISURE, LLC, May 24, 2021, https://www.valisure.com/wp-content/uploads/Valisure-Citizen-Petition-on-Benzene-in-Sunscreen-and-After-sun-Care-Products-v9.7.pdf and *Valisure's Citizen Petition on Benzene in Sunscreen and After-sun Care Products Attachment A*, VALISURE, LLC, May 24, 2021, Attachment A https://www.valisure.com/wp-content/uploads/Attachment-A-Table-5-of-Valisure-FDA-Citizen-Petition-on-Sunscreen-v2.pdf (hereinafter "Valisure Citizen Petition") are attached

amounts of benzene. *See id*; Valisure Citizen Petition.

The Court should dismiss the FAC for the following reasons:

*First*, Plaintiffs lack Article III standing. Plaintiffs have no "concrete and particularized injury" because they fail to allege that the products they purchased contained benzene. Plaintiffs merely allege that there is a "***risk*** the products ***may*** contain benzene" because a third-party tested 19 bottles of Banana Boat® sunscreen products and found 5 of them purportedly contained benzene at levels of 0.43 ppm, or less, which is well below the FDA's 2 ppm benzene standard.

*Second*, Plaintiffs' claims are preempted by the Food Drug and Cosmetic Act ("FDCA"), which authorizes the FDA to regulate, *inter alia*, the ingredients and labeling of nonprescription over-the-counter ("OTC") drugs, including "safety" and "efficacy" of the sunscreen Products at issue here. *See* 21 U.S.C. §§ 351, 352.21; 21 C.F.R. § 201, *et seq*. The enforcement of Plaintiffs' claims are further subject to the primary jurisdiction of the FDA to promote uniformity and avoid conflict with the FDA's forthcoming decision on the Valisure Citizen Petition and the FDA's September 27, 2021, deadline to propose revisions to sunscreen regulations.

*Third*, Plaintiffs fail to state a claim for relief because a reasonable consumer would not believe that product advertising or labels that comply with FDA requirements are misleading.

*Fourth*, Plaintiffs fail to meet the heightened pleading requirement of Rule 9(b). Plaintiffs fail to identify which Products they purchased and articulate how and why the cited advertising is misleading.

*Fifth*, Plaintiffs' equitable claims fail because they fail to allege lack of adequate remedy at law.

*Sixth*, the economic loss doctrine bars Plaintiffs' common law claims.

*Seventh*, Plaintiffs' express warranty claim fails because Plaintiffs cannot attempt to enforce a warranty they created, with their own words, when Defendants did not agree to such a promise.

*Finally*, Plaintiffs' strict products liability claims for failure to warn and manufacturing

---

as **Exhibit B**, Declaration of Megan McCurdy. The incorporation by reference doctrine permits the Court to take into account the content of documents not attached to the complaint but that are (1) referred to in the complaint; (2) central to the claim; and (3) undisputed. *See Fin. Sec. Assurance, Inc. v. Stephens, Inc.*, 500 F.3d 1276, 1284 (11th Cir. 2007).

defect fail because the products are not unreasonably dangerous.

For these reasons, the Court should dismiss all of Plaintiffs' claims with prejudice.

## ARGUMENT

Plaintiffs filed this putative class action complaint alleging purported violations of Florida's Deceptive and Unfair Trade Practices Act ("FDUTPA"), Fla. Stat. §§ 501.201-213; unjust enrichment; negative misrepresentation/omission; breach of express warranty; breach of implied warranty; strict product liability for failure to warn; and strict product liability for manufacturing defect.

On May 25, 2021, Valisure filed its Citizen Petition with the FDA alleging that it tested select sunscreen products from various manufacturers and found trace amounts of benzene, ranging from zero and less than 0.1 ppm to 6.77 ppm. Valisure Citizen Petition and Attachment A. The Banana Boat® Products tested well below the FDA's standard – 2 ppm – for trace amounts of benzene, with amounts ranging from zero and less than 0.1 ppm to 0.43 ppm. *Id.*[4] Despite testing well below the FDA's 2 ppm benzene standard, Plaintiffs allege that the Products are "adulterated and misbranded" because the Product labels do not indicate that benzene *may be present* as an ingredient. *See* FAC ¶ 24 (emphasis added). Plaintiffs state that they "would not have purchased Defendants' sunscreen products had [they] known *there was a risk* the products may contain benzene." *See* FAC ¶¶ 4-5 (emphasis added).

Plaintiffs rely heavily on the Valisure Citizen Petition but fail to acknowledge that 14 of the 19 Banana Boat® tested Products had zero benzene or tested lower than less than the .1 ppm LLOQ. And the remaining results were well below the FDA's 2 ppm standard. Valisure Citizen Petition at pp. 13-15 and Att. A. Plaintiffs clearly fail to allege that the specific bottle of Banana Boat® sunscreen they purchased contained benzene. Valisure found *both* zero benzene and trace

---

[4] Valisure purportedly tested 19 bottles of Banana Boat® sunscreen products. *See* Valisure Citizen Petition and Attachment A. "[B]enzene was not detected" in 10 of the bottles. *Id.* at Att. A. Four Banana Boat® products tested at "<0.1" which is the lower limit of quantitation ("LLOQ"). *Id.* That is, 4 bottles tested less than the lowest amount a sample could be quantitatively determined to contain benzene. *Id.* at pp. 9, 14-15. Valisure represents that the following bottles contained benzene (in parts per million): Kids Max Protect & Play™ Sunscreen C – Spray SPF 100 at 0.11 ppm; Ultra Sport™ Clear Sunscreen Spray SPF 100 at 0.15 ppm; Kids Max Protect & Play™ Sunscreen C – Spray SPF 100 at 0.19 ppm; Ultra Mist® Deep Tanning Dry Oil Continuous Clear Spray SPF 4 at 0.36 ppm; and Kids Max Protect & Play™ Sunscreen C –SPF 100 at 0.41 and/or 0.43 ppm.

amounts in the brands Plaintiffs did purportedly purchase. *See* FAC ¶¶ 4-5 (Plaintiffs purchased Banana Boat® Ultra Sport™ and Kids Max Protect & Play™ sunscreen); *see also* Valisure Citizen Petition at 13 and Att. A (both zero benzene and trace amounts in these brands).

Plaintiffs further allege that the following statements are misleading:

- a May 5, 2018 Press Release for Simply Protect™ that states, "provide today's busy family with sun protection without worry when used and reapplied as directed," "safe and effective sun protection"[5] and "know families are interested in sunscreen without any extra ingredients like dyes or perfumes - but with the same trusted protection Banana Boat has always provided";
- a March 2, 2016 safety data sheet that states: "safe for intended use based on the formulation, testing results, and the long history of safe consumer use"; and
- a June 21, 2019 West Palm Beach Florida News Article that states: "all Banana Boat products undergo rigorous testing to ensure they are appropriately labeled and meet all relevant health regulations, including SPF tests."

*See* FAC ¶ 43.

## I.    PLAINTIFFS LACK ARTICLE III STANDING REQUIRING DISMISSAL.

The Court should dismiss Plaintiffs' claims because the Court lacks subject matter jurisdiction. FED. R. CIV. P. 12(b)(1).  Article III of the United States Constitution dictates that jurisdiction of the federal courts extends only to actual cases or controversies.  U.S. Const. art. III; *see also Lujan v. Defs. of Wildlife*, 504 U.S. 555, 590 (1992). To have standing under Article III of the U.S. Constitution, a plaintiff has the burden to show: (1) an injury-in-fact; (2) that the injury is traceable to the challenged action of the defendant; and (3) that the injury is redressable by a favorable ruling.  *Lujan*, 504 U.S. at 560–61. *See also Monsanto Co. v. Geertson Seed Farms*, 130 S. Ct. 2743, 2752 (2010); *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.*, 528 U.S. 167, 180-81 (2000); *Bryon Jackson v. Anheuser-Busch Inbev SA/NV, LLC*, No. 20-CV-23392, 2021

---

[5] Notably, Plaintiffs' FAC cherry picks only portions of this quote in an effort to skew the context of the press release. *Compare* FAC ¶ 41 ("provide today's busy family with sun protection without worry when used and reapplied as directed" and "safe and effective sun protection") with *Press Release for Simply Protect™*, EDGEWELL (May 5, 2018) (accessible at https://ir.edgewell.com/news-and-events/press-releases/2018/05-01-2018-130128066?sc%20_lang=en) ("The Banana Boat brand offers a wide range of product options that provide today's busy family with sun protection without worry when used and reapplied as directed, so the fun can go on.  The advanced technology in Banana Boat sunscreen products provides effective broad spectrum UVA and UVB protection. Banana Boat sunscreens have undergone testing in seven conditions[2] – sun, pool water, ocean water, wind, sweat, sand and extreme heat up to 100 degrees – to provide safe and effective sun protection against UVA and UVB rays.").

WL 3666312, at *3 (S.D. Fla. Aug. 18, 2021) (quoting *Kelly v. Harris*, 331 F.3d 817, 819-20 (11th Cir. 2003).

A.   **Plaintiffs fail to allege an injury-in-fact.**

Plaintiffs fail to allege an injury-in-fact required for standing under Article III.  The Supreme Court has held that a plaintiff must suffer an injury that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical."  *Lujan*, 504 U.S. at 560; *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1545 (2016); *Friends of the Earth*, 528 U.S. at 180 (2000).  Where a complaint makes allegations of potential future injury, the threat of future harm must be "certainly impending" as opposed to a mere possibility.  *Whitmore v. Arkansas*, 495 U.S. 149, 158 (1990); *Lujan*, 504 U.S. at 564.

i.   **Plaintiffs fail to allege a particularized injury.**

Courts have repeatedly found plaintiffs do not plausibly allege an injury when they allege that ***some but not all*** products in a product line contain an offending substance and fail to allege that the product ***they purchased*** contained such substance. *See, e.g., Doss v. General Mills, Inc.*, 816 Fed. App'x. 312, 314 (11th Cir. 2020), *aff'd*, 816 F. App'x 312 (11th Cir. 2020). A plaintiff must "allege that the [products] she herself bought actually contain any glyphosate—[not] just that some [products] that have been tested do." *Id.* (dismissing all of plaintiffs' claims including FDUTPA, express and implied warranty, and unjust enrichment); *see also Wallace v. ConAgra Foods, Inc.*, 747 F.3d 1025, 1030 (8th Cir. 2014) (quotations omitted) ("It is not enough for a plaintiff to allege that a product line contains a defect or that a product is at risk of manifesting this defect; rather, the plaintiffs must allege that *their* product *actually exhibited the alleged defect*"); *Pels v. Keurig Dr. Pepper, Inc.*, No. 19-CV-03052-SI, 2019 WL 5813422, at *5 (N.D. Cal. Nov. 7, 2019) (A plaintiff must "plead the water *he* purchased contained violative arsenic levels," not just that a report identified arsenic in some of the products); *Coffelt v. Kroger Co.*, No. 16-1471 JGB, 2018 WL 6004543, at *11 (C.D. Cal. Aug. 17, 2018) (plaintiff lacked standing when he failed to show the product he purchased had in fact been adulterated or contaminated and instead only alleged that the product "*may* have been contaminated").

Further, courts regularly dismiss claims, like Plaintiffs', that rely on third-party testing of an allegedly defective product. *See, e.g., Doss,* 2019 WL 7946028 at *2 (holding plaintiff lacked standing because she did not "allege that the Cheerios she herself bought actually contain any glyphosate—just that some Cheerios that have been tested do"); *In Gaminde v. Lang Pharma*

*Nutrition, Inc.*, No. 1:18-cv-300, 2019 WL 1338724, at *3-4 (N.D.N.Y. Mar. 25, 2019) (holding that the plaintiff lacked standing because he "failed to allege that he tested his bottle of CVS Krill Oil" and "it is speculation to allege that because two CVS Krill Oil bottles in a USDA study were found to have less than the stated amount of Omega-3 Krill Oil, the bottle that [plaintiff] purchased must as well").

Here, Plaintiffs' conjectural and hypothetical allegations include that the Products "**may be** adulterated with benzene" and that "**there was a risk** the products may contain benzene." FAC ¶¶ 4-5 (emphasis added). Critically, Plaintiffs do not allege that the sunscreen they purchased contained benzene or even that it was in the same kind of sunscreen or the same lot of sunscreen that Valisure found to contain trace amounts of benzene. *Compare* FAC ¶¶ 4, 5 *with* Valisure Citizen Petition at 13. Even if Plaintiffs purchased Banana Boat® Ultra Sport™ Sunscreen and Kids Max Protect & Play™ Sunscreen, *see* FAC ¶¶ 4, 5, the Valisure Citizen Petition demonstrates that Valisure tested certain bottles of those products and found results of zero or "<0.1" which is the lower limit of quantitation ("LLOQ"). Valisure Citizen Petition pp. 14-15 (<0.1) and at Att. A (not detected). As such, Plaintiffs' claims should be dismissed for failure to adequately allege injury in fact. Plaintiffs failed to allege the products they purchased contained benzene and failed to allege that they even purchased the same products in which Valisure found trace levels of benzene, leaving them only with conjectural and hypothetical allegations that the products "may" contain benzene.

###### ii. Plaintiffs' alleged economic injury cannot be premised on a hypothetical and speculative risk of harm.

Economic injury cannot be premised on a hypothetical risk of harm. *Green v. PepsiCo, Inc.*, No. 18-62011, 2019 WL 8810364, at *2 (S.D. Fla. Apr. 12, 2019) (dismissing FDUTPA claim premised on presence of glysophate in oatmeal where plaintiff alleged only hypothetical economic injury, in that she would not have purchased the product had she known it contained glysophate because she did not allege any actual injury as a result of her purchase); *Arcure v. Kellogg Company*, No. 2:10-CV-192, 2011 WL 13294631, at *4 (M.D. Fla. Mar. 29, 2011) (dismissing product liability claim premised on presence of salmonella in crackers on standing grounds because plaintiff did not allege that the crackers he consumed contained salmonella and could only point to the possibility of hypothetical future injuries that were neither imminent nor immediately likely to occur). "Assertions about what might happen do not establish an injury that is 'concrete and particularized.'" *Nat'l Alliance for Mentally Ill, St. Johns Inc. v. Bd. of Cty Comm'rs of St.*

*Johns Cty*, 376 F.3d 1292, 1295 (11th Cir. 2004) (plaintiff asserted that he *might* have opted to live in a group home had he been given the opportunity).

Here, Plaintiffs do not allege they suffered any physical harm from alleged benzene in their product. Nor do Plaintiffs allege that the products they purchased failed to protect them from the sun. Instead, Plaintiffs allege they were economically injured because they "would not have purchased the Products had [they] known there was a *risk* the products *may* contain benzene." FAC ¶¶ 4, 5. This alleged economic injury is premised on the hypothetical and conjectural risk that Plaintiffs' Products are at *risk* of *maybe* containing benzene. Further, the only reason a Product would be worthless is if such trace amount of benzene was actually dangerous or could cause harm to Plaintiffs in the future. Even if Plaintiffs' sunscreen contains trace amounts of benzene, Plaintiffs fails to allege that such trace amount of benzene would be dangerous or cause any harm. Indeed, all products tested well under the FDA's standard that allows for 2 ppm in the Products.[6]

Accordingly, Plaintiffs' claims for economic injury are premised entirely on conjectural and hypothetical risks that (1) the products they purchased contained trace amounts of benzene, and (2) such trace amounts of benzene could possibly cause harm in the future. Plaintiffs fail to allege an economic injury sufficient to establish injury-in-fact, as required for standing under Article III.  Accordingly, the Court should grant Defendants' Motion to Dismiss.

## II.   PLAINTIFFS' CLAIMS ARE SUBJECT TO THE FDA'S PRIMARY JURISDICTION AND FURTHER PREEMPTED BY FEDERAL LAW.

Federal preemption requires the dismissal of any state law claims that conflict with federal law.  *See infra*, § II.B.  The doctrine of primary jurisdiction permits a court to stay or dismiss a party's claim that falls within the jurisdiction of a federal agency.  *See infra*, § II.C.  As evidenced by the extensive regulation of the Products, dismissal is warranted on both grounds.

### A.   The products are subject to and in compliance with the 1999 sunscreen monograph.

The FDCA authorizes the FDA to regulate, *inter alia*, the ingredients and labeling of nonprescription OTC drugs, including the sunscreen Products at issue here.  *See* 21 U.S.C. §§ 351, 352.21; 21 C.F.R. § 201, *et seq.*[7] Plaintiffs acknowledge the extensive regulations applicable to

---

[6] *See infra* § II.A discussing the FDA's applicable 2 ppm standard for benzene.

[7] The FDA's overview of the "Over-the-Counter (OTC) Drug Monograph Process" provides:

In 1972, FDA established the OTC Drug Review to evaluate the safety and effectiveness of hundreds of thousands of OTC drug products that were on the

the Products. *See, e.g.,* FAC ¶¶ 16-17 ("The FDA regulates sunscreens to ensure they meet safety and effectiveness standards.").   The OTC sunscreen Products are deemed to be generally recognized as safe and effective if they are in conformity with the general requirements for nonprescription drugs, the requirements specified in the 1999 Sunscreen Monograph,[8] the applicable requirements governing effectiveness and labeling in 21 C.F.R. § 201.327,  and the general requirements for nonprescription drugs in 21 C.F.R. 330.1.  *See* 21 U.S.C. § 355h(a). If the Products fail to meet such requirements, the Products are misbranded and subject to regulatory action. *See* U.S.C. § 352(ee); 21 C.F.R. § 330.1; 21 C.F.R. § 201.66.

### i.  The Products are not misbranded or adulterated because benzene is not an ingredient in the Products.

In the case at hand, benzene is neither an active or inactive ingredient. *See* Tobias Decl. at ¶¶ 6-7, Exhibit A.   The FDCA requires active ingredients and inactive ingredients to be included on the label. *See* 21 U.S.C. § 352(e); 21 C.F.R. § 201.66(c). The FDA regulations define "active ingredient" as "any component that is intended to furnish pharmacological activity or other direct effect in the diagnosis, cure, mitigation, treatment, or prevention of disease, or to affect the structure or any function of the body of man or other animals." 21 C.F.R. § 210.3 "Inactive ingredient" is defined to include any component that is not an active ingredient. *Id.* "Component" is any ingredient intended for use in the manufacture of a drug product, including those that may not appear in such drug product.  *Id.*  Benzene is not an active or inactive ingredient in the Products. It was not listed on the label and it was never intended for use in the manufacture of the drug products. Indeed, Plaintiffs acknowledge in the FAC that "benzene is used primarily as a solvent

---

market at that time. Under the OTC Drug Review, FDA regulates certain nonprescription drugs using a system that groups products by therapeutic category. For each category, FDA issues an OTC drug monograph (OTC monograph).

An OTC monograph is a "rule book" for each therapeutic category establishing conditions, such as active ingredients, uses (indications), doses, labeling, and testing, under which an OTC drug is generally recognized as safe and effective (GRASE) and can be marketed without a New Drug Application and FDA pre-market approval.

*Over-the-Counter (OTC) Drug Monograph Process*, FDA (September 3, 2020) available at  https://www.fda.gov/drugs/over-counter-otc-drug-monograph-process (last visited on August 27, 2021).

[8] Part 352 of Title 21, Code of Federal Regulations, as published in the 1999 Sunscreen Drug Products For Over-The-Counter Human Use; Final Monograph (64 FR 27666 at 27687).

in the chemical and pharmaceutical industries, as a starting material and intermediate in the synthesis of numerous chemicals." FAC ¶ 15. Accordingly, the Products are not misbranded or adulterated as Plaintiffs contend.

ii.    **The Products are in compliance with the FDA standard that allows up to 2 ppm of benzene in the Products.**

The FDA allows for trace amounts of benzene up to a concentration of 2 ppm.[9] Both General Chapter 467 and ICH Q3C allow up to 2 ppm of benzene residual solvents in the Products. *Id*. "The objective of [Q3C] guidance is to recommend acceptable amounts for residual solvents in pharmaceuticals for the safety of the patient." *See* ICH Q3C at 3. The guidance recommends use of less toxic solvents and describes levels considered to be toxicologically acceptable for some residual solvents." *Id.* The Products' active ingredients are also subject to the 2 ppm standard in ICH QC3 and General Chapter 467. *See* 1999 Final Monograph, preamble. Further, the Products label must only identify benzene as a residual solvent on the packaging if the amount exceeds this 2 ppm concentration limit. *See* Residual Solvent Guidance.

All of the Banana Boat® products, tested by Valisure, had concentration limits of benzene well below 2 ppm, *see supra* footnote 4; which is the level accepted by FDA. Accordingly, the Products are not per se adulterated.

B.    **PLAINTIFFS' CLAIMS ARE PREEMPTED**

"The Supremacy Clause provides a clear rule that federal law 'shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, anything in the Constitution or Laws of any State to the contrary notwithstanding.'" *Arizona v. United States,* 567 U.S. 387, 399 (2012) (quoting U.S. const. art. VI, cl. 2). Federal preemption occurs when (1) Congress enacts a statute that explicitly preempts state law; (2) state law actually conflicts with federal law; or (3) federal law occupies a legislative field to such an extent that it is reasonable to conclude that Congress left no room for state regulation in that field. *Gallardo by and through Vassallo v.*

_____

[9] *See* FDA, "Residual Solvents in Drug Products Marketed in the United States" (2009) at n 2, accessible at https://www.fda.gov/media/70928/download ("Residual Solvent Guidance") (applying standards in USP General Chapter 467 Residual Solvents, accessible at https://www.uspnf.com/sites/default/files/usp_pdf/EN/USPNF/generalChapter467Current.pdf ("General Chapter 467"); International Conference on Harmonisation guidance for industry Q3C Impurities: Residual Solvents (updated April 22, 2021), accessible at https://database.ich.org/sites/default/files/ICH_Q3C-R8_Guideline_Step4_2021_0422_1.pdf ("ICH Q3C").

*Dudek*, 963 F.3d 1167, 1174 (11th Cir. 2020) (citing *Cipollone v. Liggett Group, Inc.*, 505 U.S. 504, 516 (1992)). Preemption may be either express or implied. *See Koutsouradis v. Delta Air Lines, Inc*., 427 F.3d 1339, 1443 (11th Cir. 2005). Here, Congress has unambiguously intended to expressly and impliedly preempt state law claims imposing labeling requirements differing from or in addition to those required by federal regulations.

### i.    Plaintiffs' claims are expressly preempted.

Plaintiffs' state law claims, if successful, would impose state law requirements that are expressly preempted under Section 379r of the FDCA. Section 379r(a) provides that states may not establish "any requirement ... (1) that relates to the regulation of a [nonprescription drug]; and (2) that is different from or in addition to, or that is otherwise not identical with, a requirement under [the FDCA]...." 21 U.S.C. § 379r(a). Plaintiffs' claims[10] that would impose labeling, testing, and warning requirements in addition to or different from requirements provided by the FDA are expressly preempted, as intended by Congress. *Eckler v. Neutrogena Corp*., 238 Cal. App. 4th 433, 441 n.5 (2015)[11]; and *Stansfield v. Minute Maid Co*., 124 F. Supp. 3d 1226, 1235-36 (N.D. Fla. 2015) (dismissing a state claim based on a misleading statement from a fruit juice manufacturer when that statement was expressly permitted under FDA regulations). Further, a claim cannot be misleading if expressly permitted by the FDA. *See Stansfield*, 124 F. Supp. 3d at 1236 ("Because Plaintiffs challenge the use of terms that the FDA, through its regulations, has defined and permitted, Plaintiffs' claims fall with the scope of the FDA's preemption clause") (internal citations omitted).

The FDA regulates the labeling requirements of the Products through 21 C.F.R. § 201.66 in conjunction with 21 C.F.R. § 201.237, and the 1999 Sunscreen Monograph provides labeling

---

[10] Plaintiffs specifically seek relief for conduct that is expressly permitted by the FDA. *See* FAC at Prayer, ¶¶ c-e.

[11] "The Senate Report explained the reason for federal preemption in this area: 'Under our Federal system, it is important that State and local officials enforce the same regulatory requirements for products as do our Federal officials. Different or additional requirements [at] the State or local level can work against our national marketplace, confuse consumers, raise prices, undermine public confidence in our regulatory system and in products important to the public health, and result in divergent public health protection throughout the country.'" (Sen. Rep. 105-43, *supra*, at p. 64).

requirements related to directions and use, intended purpose, ingredients,[12] disclosures, safety warnings, potential allergic reactions and when to discontinue use. *See* 21 C.F.R. 201.66(c); 1999 Sunscreen Monograph. *See also infra* §(II)(A). "The content and format requirements [of 21 C.F.R. 201.66] must be followed unless otherwise specifically provided in the applicable monograph or regulation." 21 C.F.R. § 201.66(a). "An OTC drug product that is not in compliance with the format and content requirements in this section is subject to regulatory action." 21 C.F.R. § 201.66(g).

21 C.F.R. § 201.66(c) requires that the label display certain warnings, if applicable, in the exact language quoted in the regulation. It further requires that the label indicate both active and inactive ingredients. 21 C.F.R. § 201.66(c). However, it does not provide for any deviation except for those outlined in the 1999 Sunscreen Monograph. *Id*. The only deviation permitted is related to non-misleading statements describing use and the "other information" permitted by the 1999 Sunscreen Monograph is limited to "protect the product in this container from excessive heat and direct sun." 21 C.F.R. § 201.237(c)-(f). A manufacturer cannot unilaterally change its warning language and such deviations are subject to FDA enforcement action. *See* 21 C.F.R. § 330.1.

Here, Plaintiffs allege that the Products are misleading because they "fail[] to include labeling indicating to the consumers that the Sunscreen Products may contain benzene as an active or inactive ingredient." FAC ¶ 26; *see also* FAC ¶¶ 14, 16. Pursuant to the FDA as discussed *supra* § II.A.1., benzene is not an active or inactive ingredient in the Products and therefore, the Products are not misbranded or adulterated for failure to include benzene as an ingredient or warning on the label. Defendants are not permitted to include any warnings on the Products that are not outlined in the 1999 Sunscreen Monograph, 21 CFR § 201.66(c), or 21 CFR § 201.237(d). *See* 21 CFR §

---

[12] The FDA defines "active" and "inactive" ingredients. *See* 21 C.F.R. § 210.3. Residual solvents, like benzene, are not included those definitions, see *id*; and benzene would only require disclosure if it exceed 2 ppm. *See* FDA's Residual Solvent Guidance. Any non-disclosure is protected from suit by the FDUTPA's safe harbor doctrine.   *See Hauser v. Steward Melbourne Hosp., Inc*., No. 6:19-CV-1150, 2020 WL 917259, at *4 (M.D. Fla. Feb. 11, 2020) (applying FDUTPA's safe harbor when "Defendants disclosed exactly what they were supposed to disclose in exactly the manner prescribed by federal law and rule" but plaintiffs' alleged that "Defendants should also be required to disclose this same information by additional manner and method not required by federal law").

330.1. Further, a claim cannot be misleading if expressly permitted by the FDA. *See Stansfield*, 124 F. Supp. 3d at 1236 ("Because Plaintiffs challenge the use of terms that the FDA, through its regulations, has defined and permitted, Plaintiffs' claims fall with the scope of the FDA's preemption clause") (internal citations omitted). As demonstrated above, the FDA allows for trace amounts of benzene up to a concentration of 2 ppm. *See supra* § II.A.2. Accordingly, Plaintiffs' proposed label changes are preempted by the FDA.

<strong>ii.      Plaintiffs' claims are also impliedly preempted.</strong>

Even though the FDCA contains an express preemption provision, such a provision does not foreclose the applicability of implied preemption as well. *Freightliner Corp. v. Myrick,* 514 U.S. 280, 287-89 (1995). "[A] federal statute implicitly overrides state law either when the scope of a statute indicates that Congress intended federal law to occupy a field exclusively, or when state law is in actual conflict with federal law." *Id.* at 287 (internal citation omitted). Implied or conflict preemption arises when a state-law claim "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress" or a federal agency acting within the scope of its congressionally delegated authority. *Capital Cities Cable, Inc. v. Crisp,* 467 U.S. 691, 698-99, (1984) (citation omitted). The FDA's extensive and exclusive regulation of the Products, *see supra,* §§ II.A, II.B.1, further demonstrates that Congress left no room for states to supplement the field of FDCA regulations. As such, Plaintiffs' claims are impliedly preempted.

<strong>iii.      Plaintiffs' claims are barred as private enforcement actions.</strong>

Plaintiffs' claims are also preempted to the extent they challenge the Products' safety and efficacy and to the extent they claim the Products are adulterated and misbranded because they do not have a private right to allege FDCA violations. "[A]ll proceedings for the enforcement, or to restrain violations of [the Act] shall be by and in the name of the United States." 21 U.S.C.A. § 337.  Courts have interpreted this provision to mean that no private right of action exists to redress alleged violations of the FDCA. *See Ellis v. C.R. Bard, Inc.*, 311 F.3d 1272, 1285 n.10 (11th Cir. 2002) ("[N]o private right of action exists for a violation of the FDCA."); *Gile v. Optical Radiation Corp.*, 22 F.3d 540, 544 (3d Cir. 1994), *cert. denied*, 513 U.S. 965 (1994) ("violations of the FDCA do not create private rights of action"); *In re Epogen & Aranesp Off-Label Mktg. & Sales Practices Litig.*, 590 F. Supp. 2d 1282, 1290-91 (C.D. Cal. 2009) (The absence of a private right of action also prohibits use of state unfair competition laws "as a vehicle to bring a private cause of action that is based on violations of the FDCA"); and *Soja v. Medtronic, Inc.*, No. 2:19-CV-00219, 2019

WL 2391609, at *3 (E.D. Cal. June 6, 2019) ("[W]hen the state-law claim is in substance (even if not in form) a claim for violating the FDCA -- that is, when the state claim would not exist if the FDCA did not exist").

Thus, the doctrines of express and implied preemption force Plaintiffs into a narrow gap: they must "point to some aspect of this product's label that is not required or permitted by the regulations which a reasonable jury could find makes the label 'false or misleading.'" *Stansfield*, 124 F. Supp. 3d at 1235-36. *See also Wolicki-Gables v. Doctors Same Day Surgery Center. Ltd.*, 216 So. 3d 665, 672 (Fla. Dist. Ct. App. 2017). "The plaintiff must be suing for conduct that *violates* the FDCA (or else his claim is expressly preempted by § 360k(a)), but the plaintiff must not be suing *because* the conduct violates the FDCA (such a claim would be impliedly preempted under [the U.S. Supreme Court's decision in] *Buckman*)." *Perez v. Nidek Co.*, 711 F.3d 1109, 1120 (9th Cir. 2013) (emphasis original).

Here, Plaintiffs allege the products are adulterated under Section 501 of the FDCA and misbranded under Section 502 of the FDCA. *See, e.g.,* FAC ¶¶ 14, 18-24, 35, 42, 45, 47, 57. Plaintiffs also claim the products are not safe and effective, which is subject to the exclusive jurisdiction of the FDA. *See e.g.* FAC ¶¶ 43, 82, 83. These claims are barred because Plaintiffs are not allowed to bring a private right of action to enforce the FDCA.

### C. PLAINTIFFS' CLAIMS ARE SUBJECT TO THE FDA'S PRIMARY JURISDICTION.

Federal law bars Plaintiffs' claims, as they are subject to the primary jurisdiction of the FDA. The primary jurisdiction doctrine ensures the proper working relationship between federal agencies and courts. *See United States. v. W. Pac. R. R. Co*., 352 U.S. 59, 62 (1956); *Far East Conference v. United States*, 342 U.S. 570, 575 (1952). The doctrine "applies where a claim is originally cognizable in the courts, and comes into play whenever enforcement of the claim requires the resolution of issues which, under a regulatory scheme, have been placed within the special competence of an administrative body." *W. Pac. R. R. Co.*, 352 U.S. at 64; *see also Snyder v. Green Roads of Florida LLC*, 430 F. Supp. 3d 1297, 1307-08 (S.D. Fla. Jan. 3, 2020) (applying doctrine of primary jurisdiction to stay and administratively close an FDUTPA class action claim premised on safety of cannabis-based products pending an FDA decision on the same topic because the matter was the subject of continuing FDA regulation and citing the need for uniform regulations in the area); *Greenfield v. Yucatan Foods*, 18 F. Supp. 3d 1371, 1374-76 (S.D. Fla. May 7, 2014) (applying doctrine of primary jurisdiction to stay and administratively close an

FDUTPA class action claim premised on defendant's alleged mislabeling of "sugar" as "evaporated cane juice" pending FDA decision on appropriateness of that labeling because the matter was within agency's expertise and there was a need for a uniform rule on the topic). Here, there is also a need for uniform interpretation of regulatory framework governing sunscreens.

*First*, on May 24, 2021, Valisure LLC filed the Valisure Citizen Petition to which the FDA is required to respond to within 180 days.[13]  21 C.F.R. § 10.30(e). The Valisure Citizen Petition requests that the FDA consider promulgating rules or administrative orders related to the proposed sunscreen rule and the 1999 Sunscreen Monograph; develop industry guidance documents for the analysis of benzene in sunscreen products; review and update the current QC3 guidance that allows for 2 ppm of benzene in the Products; and develop guidance defining the mass of a standard daily total application of sunscreen for daily exposure. *See* Valisure Citizen Petition. This Court will ultimately have to rule on each of these issues if Plaintiffs' claims proceed past this Motion to Dismiss. This Court should defer to the FDA's expertise and stay or dismiss Plaintiffs' FAC until the FDA issues an order addressing the Valisure Citizen Petition.

*Second*, notwithstanding the pending Valisure Citizen Petition on benzene, the FDA clearly intends to update its regulation of OTC sunscreen products and any safety and efficacy ruling here might easily conflict with that final sunscreen order. *See* Pub.L. 116-136, Div. A, Title III, § 3854(c), Mar. 27, 2020, 134 Stat. 456. Section 3854 of the CARES Act also requires the Secretary of Health and Human Services to revise the final administrative order concerning OTC monograph sunscreen not later than September 27, 2021. *See Id.*

*Third*, as outlined in §§ II.A and II.B, *supra*, the FDA extensively regulates the Products and solely possesses the expertise and power to facilitate uniform resolutions to Plaintiffs' claims in this case and similar claims filed in numerous other jurisdictions against various other manufacturers.

Plaintiffs seek to enforce labeling requirements, warning requirements, and standards for residual solvents, and claims based on safety and efficacy of the Products, which fall under the primary jurisdiction of the FDA. *See supra* §§ II.A, II.B. Accordingly, this Court should stay or dismiss Plaintiffs' claims.

---

[13] The day after Valisure filed its Citizen Petition, Plaintiffs' counsel filed a putative class action in the Central District of California. *See Bowen v. Energizer Holdings, Inc., et al.*, Case No. 2:21-cv-04356. This nearly identical complaint followed days later.

### III.    PLAINTIFFS FAIL TO STATE A CLAIM.

Plaintiffs' claims should be dismissed because they fail to state a claim upon which relief may be granted.  FED. R. CIV. P. 12(b)(6). To survive a motion to dismiss, Plaintiffs must plead "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see also* FED. R. CIV. P. 8; *Twombly*, 550 U.S. at 555 (Under Rule 8, a plaintiffs' "obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. . . . Factual allegations must be enough to raise a right to relief above the speculative level.") (internal quotations and alteration omitted). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 129 (citing *Twombly*, 550 U.S. at 556).

### A.    PLAINTIFFS' CLAIMS FAIL TO MEET THE REASONABLE CONSUMER STANDARD.

Plaintiffs' claims under the FDUTPA are considered under a reasonable consumer standard, where the Court asks whether there is a "representation, omission or practice that is likely to mislead the consumer acting reasonably in the circumstances[.]" *Zlotnick v. Premier Sales Grp., Inc.*, 480 F.3d 1281, 1284 (11th Cir. 2007) (citations omitted).  The reasonable consumer standard requires a showing of "probable, not possible, deception" that is "likely to cause injury to a reasonable relying consumer. *Id.* at 1284 (citing *Millennium Commc'ns, Inc. v. Office of the Att'y Gen.*, 761 So. 2d 1256, 1263 (Fla. Dist. Ct. App. 2000) (affirming dismissal of FDUTPA claim because omissions by a credit card promotional company were unlikely to mislead a reasonable consumer). Dismissal is appropriate where a court can conclude as a matter of law that members are not likely to be deceived by an advertisement. *Id.* at 1286 (affirming dismissal of FDUTPA after finding reasonable purchaser would "not likely be misled" by seller representation).

Courts routinely reject fraud-based challenges to products that contain trace amounts of residual solvents (like benzene) and pesticides under the reasonable consumer standard. *See Axon v. Citrus World, Inc.*, 354 F. Supp. 3d 170, 183 (E.D.N.Y. 2018), *aff'd sub nom. Axon v. Florida's Nat. Growers, Inc.*, 813 Fed. App'x 701 (2d Cir. 2020) ("[T]he court finds it 'implausible that a reasonable consumer would believe that a product labeled ['Florida's Natural'] could not contain a trace amount of glyphosate that is far below the amount' deemed tolerable by the FDA," particularly given that  (like benzene) "[g]lyphosate [] is not an 'ingredient' added to defendant's

15

products; rather, it is a substance introduced through the growing process."); [14]

Here, Plaintiffs appear to allege two theories of deceptive and misleading conduct: (1) omission of benzene as an ingredient and the omission of a warning that the Products may contain benzene; and (2) affirmative misrepresentations. Both fail to satisfy the reasonable consumer standard.

> ### i.      Plaintiffs' omission theory fails to satisfy the reasonable consumer standard.

Plaintiffs allege that the Products are false and misleading because the labels do not list benzene as an active or inactive ingredient on the product. *See, e.g.,* ¶¶ 14, 17. Plaintiffs interpret the listed ingredients to mean that the Products are free from any traces of any other substances or residual solvents such as benzene. *Id.* In other words, Plaintiffs believe that the Products' listed ingredients contain absolute molecular purity and that it is misleading to not list trace amounts of benzene – well below the FDA's 2 ppm standard – as an ingredient that may be in the Products.

As discussed above, benzene is not an active or inactive ingredient in the Products. *See supra* § II. It is unreasonable that a significant portion of the general consuming public would believe the Products would never contain trace amounts of a substance not listed as an ingredient, especially when the FDA allows up to 2 ppm of residual solvents such as benzene. Nor would a significant portion of the general consuming public believe that the Products should list benzene as an ingredient when the Product complies with FDA requirements regarding what substances to include on the label. It is also implausible that a reasonable consumer would understand the products to be free of any trace amounts of benzene when the products are not labeled "benzene

---

[14] *Hawyuan Yu v. Dr. Pepper Snapple Grp., Inc.*, No. 18-CV-06664-BLF, 2020 WL 5910071, at *4-7 (N.D. Cal. Oct. 6, 2020) (holding that reasonable consumer would not understand "all natural" to mean that the product did not contain trace amounts of pesticides below the limit tolerated by the FDA); *Parks v. Ainsworth Pet Nutrition, LLC*, 377 F. Supp. 3d 241, 247 (S.D.N.Y. 2019) ("But a reasonable consumer would not be so absolutist as to require that 'natural' means there is no glyphosate, even an accidental and innocuous amount, in the Products."); *In re Gen. Mills Glyphosate Litig.*, No. CV 16-2869 (MJD/BRT), 2017 WL 2983877, at *6 (D. Minn. July 12, 2017) ("[I]t is not plausible to allege that the statement 'Made with 100% Natural Whole Grain Oats' means that there is no glyphosate in Nature Valley Products or that a reasonable consumer would so interpret the label"); and *Bush v. WellPet, LLC*, No. CV 21-10059-RGS, 2021 WL 1408118, at *3 (D. Mass. Apr. 14, 2021) (holding that any misrepresentation was immaterial because "[a] reasonable consumer therefore would not be so 'absolutist' as to require a 'grain free' product to contain no gluten, however negligible the amount actually present").

free." *See* Tobias Decl. at 1-2, Exhibit A.

A reasonable consumer would not understand or be misled to believe that the Products are unsafe when they contain levels of benzene well under what is permitted by the FDA. Nor would they expect the label to include a warning that the products may contain less than 2 ppm of benzene when the FDA specifically allows for up to 2 ppm of benzene in the Products. Here, Plaintiffs allegedly purchased unspecified SPF and kinds of Banana Boat® Ultra Sport™ Clear Sunscreen. *See* FAC ¶ 4, 5. Valisure tested two bottles of this sunscreen in SPF 100: one contained 0.15 ppm of benzene and one contained zero benzene. *See* Valisure Citizen Petition, p. 13, Att. A. Similarly, Plaintiff Hart allegedly purchased unspecified kinds and SPF of Kids Max Protect & Play™ Sunscreen. Valisure reported the bottles of SPF 100 tested contained both no benzene and trace levels at or below 0.43 ppm. *Compare* Valisure Citizen Petition at Att. A (not detectible) *with* Valisure Citizen Petition at p. 13. A reasonable consumer would not understand these trace amounts of benzene, which are less than what is allowed by the FDA, to be harmful.   Additionally, a reasonable consumer would not understand or be misled to believe that the product is not effective because it contains less than 2ppm of benzene. Indeed, Plaintiffs have failed to even allege that the less than 0.43 ppm benzene found in a different bottle of sunscreen rendered the Products they purchased ineffective at protecting them from the sun.

ii.   **Plaintiffs' misrepresentation theories fail to satisfy the reasonable consumer standard.**

Further, no reasonable consumer would be misled by the alleged affirmative misrepresentations in Defendants' "advertising" in the manner Plaintiffs allege. Plaintiffs take statements out of context.

a.   **The May 5, 2018 Press Release for Simply Protect™ would not mislead a reasonable consumer.**

On May 5, 2018, Defendants published a Press Release for Simply Protect™ that stated in part:

> The Banana Boat brand offers a wide range of product options that provide today's busy family with sun protection without worry when used and reapplied as directed, so the fun can go on.  The advanced technology in Banana Boat sunscreen products provides effective broad spectrum UVA and UVB protection. Banana Boat sunscreens have undergone testing in seven conditions – sun, pool water, ocean water, wind, sweat, sand and extreme heat up to 100 degrees – to provide safe and effective sun protection against UVA and UVB rays.

*Press Release for Simply Protect™*, *supra* note 5.

Plaintiffs cherry pick portions of this statement and interpret them to be "misrepresentations" regarding health risks. *See* FAC ¶ 43. It is implausible that a significant portion of the consuming population would cherry pick "provide today's busy family with sun protection without worry when used and reapplied as directed" from the statement and understand it to mean that the product does not contain trace amounts of benzene within the FDA standards. *Id*. Instead, a reasonable consumer understands this statement within the context of the Products' ability to protect the user from the sun, "so the fun can go on." *See* Press Release for Simply Protect™. Nor is it plausible that a significant portion of the consuming population would understand "safe and effective sun protection" to mean the product does not contain trace amounts of benzene when the full sentence is clearly related to the Products' efficacy and sun protection. *See* Press Release for Simply Protect™ (to provide safe and effective sun protection ***against UVA and UVB rays***) (emphasis added).

Plaintiffs also point to the portion of the press release that states, "families are interested in sunscreen without any extra ingredients like dyes or perfumes - but with the same trusted protection Banana Boat has always provided." *See* FAC ¶ 43. Yet, Plaintiffs do not allege that Defendants added benzene as an ingredient similar to a dye or perfume. A reasonable consumer would not understand such statement as precluding the possibility that trace amounts of residual solvents – within the FDA's guidelines – are in the Products.

Further, the May 5, 2018 Press Release was specifically related to Simply Protect™, not all Products as Plaintiffs attempt to allege. It is unreasonable that a significant portion of the consuming population, acting reasonably under the circumstances, would believe that a press release related to a new product – Simply Protect™ – would contain representations related to every Banana Boat® product. Indeed, Plaintiffs do not even allege they purchased a Simply Protect™ sunscreen product. It is also impossible for Plaintiffs or any reasonable consumers, to have been misled by the Press Release for Simply Protect™ when purchasing the Products prior to May 5, 2018, when it was published.

> **b.   The March 2, 2016 Safety Data Sheet would not mislead a reasonable consumer.**

Defendant Edgewell Personal Care, LLC published a Safety Data Sheet on March 2, 2016 related to "Banana Boat® Dry Oil Spray SPF 4 (Aerosol)" and "Banana Boat® Sport Performance SPF 100 Sunscreen (Aerosol)" that states: "[t]his product is safe for its intended use based on the formulation, testing results, and the long history of safe consumer use." *Safety Data Sheet,*

EDGEWELL PERSONAL CARE, LLC (March 2, 2016) (https://edgewell.com/wp-content/uploads/2016/08/92014320-BB-Dry-Oil-Spray-SPF-4.pdf). Neither of these Banana Boat® products are included in Plaintiffs' definition of the Products. Nor do Plaintiffs allege they purchased either of these products.  It is unreasonable that a significant portion of the consuming population would understand a safety data sheet for a specific product to be applicable to all Banana Boat® products. It is further implausible that a significant portion of the population would rely on a March 2, 2016 online data sheet for the proposition that the Products do not contain trace amounts of benzene when purchasing the Products. Accordingly, no reasonable consumer would be misled by the Safety Data Sheet in the manner Plaintiffs allege.

<strong>c.    The July 21, 2019 article from Florida would not mislead a reasonable consumer</strong>

On June 21, 2019, a West Palm Beach, Florida news station posted an article discussing a woman from Boynton Beach, Florida who alleged that an *unspecified* Banana Boat® spray caused her son to blister. Edgewell Personal Care commented in the news article and stated: "all Banana Boat products undergo rigorous testing to ensure they are appropriately labeled and meet all relevant health regulations, including SPF tests.  For some people, sensitivity to an ingredient can be triggered or exacerbated by the sun…" J. Callaway*, Dermatologists say these sunscreen ingredients can cause blisters and burns on some children's skin* (initially published June 21, 2019), accessible at https://www.10news.com/news/national/dermatologists-say-these-sunscreen-ingredients-can-cause-blisters-and-burns-on-some-childrens-skin). First, this statement is not false as the Products meet all relevant health regulations. *See supra* § II. It is unreasonable that a reasonable consumer would understand this to mean the Products may not contain trace amounts of benzene that are within the relevant health regulations. Additionally, it is implausible that a significant portion of the general consuming public would rely on this July 21, 2019 article initially when purchasing the Products. *See* FAC ¶ 43. It is also impossible for Plaintiffs or any reasonable consumer, to have been misled by the article when purchasing the Products prior to July 21, 2019, when it was published.

Further, a reasonable consumer would not understand the alleged misrepresentations Plaintiffs identify to be anything more than non-actionable puffery.  Statements that are "[g]eneralized, vague, and unspecified . . . constitute 'mere puffery' upon which a reasonable consumer could not rely, and hence are not actionable." *Azoulai v. BMW of N. Am. LLC*, No. 16-CV-00589-BLF, 2017 WL 1354781, at *8 (N.D. Cal. Apr. 13, 2017). "To be

actionable, a statement must be 'specific and measurable' and capable of being proven true or false." *Id. See also Annunziato v. eMachines, Inc.*, 402 F. Supp. 2d 1133, 1140-41 (C.D. Cal. 2005) (characterizing "quality," "reliability," and "safe" as non-actionable puffery). Thus, statements that Defendants' Product are "without worry," offer "safe and effective sun protection," offer "trusted protection," and offer "protection you can trust" that is "high-quality" and allows people to "enjoy every moment outdoors," are non-actionable puffery. Accordingly, Plaintiffs' theories of omission and affirmative misrepresentation both fail to satisfy the reasonable consumer standard and should be dismissed.

### B.    PLAINTIFFS FAIL TO MEET RULE 9(B)'S HEIGHTENED PLEADING STANDARD.

Plaintiffs' FDUTPA claims are all grounded in fraud are subject to the heightened pleading requirements of Rule 9(b).  *See, e.g., Llado-Carreno v. Guidant Corp.*, 09-cv-20971, 2011 WL 705403, at *5 (S.D. Fla. Feb 22, 2011) (Altonaga, J.); *Toca v. Tutco*, LLC, 430 F. Supp. 3d 1313, 1328 (S.D. Fla. 2020) (dismissing FDUTPA claim after finding the complaint contained only conclusory statements regarding the specifics of the alleged fraud); *Perret v. Wyndham Vacation Resorts, Inc.*, 846 F. Supp. 2d 1327, 1333 (S.D. Fla. 2012) (Seitz, J.); *Begualg Inv. Management Inc. v. Four Seasons Hotel Ltd.*, No. 10-22153, 2011 WL 4434891 (S.D. Fla. Sep. 23, 2011) (Martinez, J.). To meet the requirements of Rule 9(b), "a party must state with particularity the circumstances constituting fraud...." Fed.R.Civ.P. 9(b).  This heightened standard is applicable when a general allegation that defendant's "actions are deceptive and in clear violation of FDUPTA" is not supported by any specific facts. *Llado-Carreno*, 2011 WL 705403, at *5.

The Eleventh Circuit has held that a party must plead the following particulars under the heightened pleading standard: (1) precisely what statements were made; (2) the time and place of each statement and the person responsible for making (or in the case of omissions, not making) it; (3) the content of such statements and the manner in which they caused the plaintiff to be misled; and (4) what the defendants obtained as a result of the fraud. *Ziemba v. Cascade Int'l, Inc.*, 256 F.3d 1193, 1210 (11th Cir. 2001) (affirming dismissal of fraud claim when complaint did not allege specific facts raising inference defendant was aware of fraud); *Corsello v. Lincare, Inc*. 428 F.3d 1008, 1013 (11th Cir. 2005) (plaintiff must provide the "who, what, where, when and how" of the fraud); *USA Nutraceuticals Group, Inc. v. BPI Sports, LLC*, 2016 WL 4254257, at *4 (S.D. Fla. Feb. 16, 2016). The requirement is intended to alert defendants to the precise misconduct with which they are charged and to protect defendants against "spurious charges of immoral and

fraudulent behavior." *Durham v. Bus. Mgmt. Assoc.*, 847 F.2d 1505, 1511 (11th Cir. 1988).

Here, Plaintiffs fail to allege what specific products they purchased. They also fail to allege that they even purchased a product containing benzene. Plaintiff Zapatero does not indicate what SPF she allegedly purchased. *See* FAC ¶ 4. Plaintiff Hart fails to allege what SPF he allegedly purchased, and even fails to allege whether he purchased sprays or lotions. *See* FAC ¶ 5. Accordingly, Defendants are not alerted to which of the Product's labels are allegedly misleading to Plaintiffs.

Additionally, Plaintiffs fail to plead with particularity how, when, and why they relied on any of the alleged misrepresentations. Plaintiffs fail to allege that *they read or relied* on any of the identified "advertising" in advance of their purchase. Plaintiffs only identify a safety data sheet, a press release, and a news article as "advertising" in FAC ¶ 43, but fail to allege what advertising they viewed, read, or heard. *Id.* No do they allege when they were exposed to such representations, and where they were exposed to such representations. *Id.* Plaintiffs also fail to allege that they relied on advertising, let alone how or why they relied on such advertising and how or why such advertising deceived them. *Id.*

Accordingly, Plaintiffs' claims should be dismissed because Plaintiffs fail to meet the heightened pleading standard under Rule 9(b) to state a claim on this basis under the FDUTPA and common law claims of breach of express warranty.

### C. PLAINTIFFS' EQUITABLE CLAIMS FOR UNJUST ENRICHMENT AND REQUESTS FOR EQUITABLE RELIEF FAIL BECAUSE THEY FAIL TO ALLEGE THEY LACK AN ADEQUATE REMEDY AT LAW.

The Court should dismiss Plaintiffs' equitable claim for unjust enrichment because they fail to allege that they lack an adequate remedy at law. Equitable remedies are not available where there is an adequate legal remedy. *Am. Honda Motor Co., Inc. v. Motorcycle Info. Network, Inc.* 390 F. Supp. 2d 1170, 1178 (M.D. Fla. 2005) (dismissing unjust enrichment claim against defendant because adequate remedy existed at law under the FDUTPA); *PB Prop. Mgmt. v. Goodman Mfg. Co., L.P.*, No. 3:12-cv-1366-J-20JBT, 2013 U.S. Dist. LEXIS 200218, at *25 (M.D. Fla. Aug. 27, 2013) (same, where remedy existed at law – "namely [plaintiff's] express warranty and FDUTPA claims"); *Bowleg v. Bowe*, 502 So. 2d 71, 72 (Fla. Dist. Ct. App. 1987) ("[T]he theory of unjust enrichment is equitable in nature and is, therefore, not available where there is an adequate legal remedy...."). "Nor can a plaintiff plead an unjust enrichment claim when he has also pled an FDUTPA claim based on the same factual allegations." *PB Prop. Mgmt.*, 2013

U.S. Dist. LEXIS 200218, at *25 (citing *Jovine v. Abbott Laboratories, Inc.*, 795 F. Supp. 2d 1331, 1341-42 (S.D. Fla. 2011)). Here, Plaintiffs seek injunctive relief, restitution, disgorgement, and other equitable relief. *See* FAC ¶ 109, Prayer. Yet, Plaintiffs also seek actual damages and/or statutory damages for breach of express warranty and their claims under the FDUTPA. *See* FAC ¶¶ 42, 57, 84, Prayer.  Plaintiffs' unjust enrichment claim and their requests for equitable relief should therefore be dismissed for failure to allege that they lack an adequate remedy at law because they have an adequate remedy at law.

### D.    PLAINTIFFS' TORT CLAIMS ARE ALSO BARRED BY THE ECONOMIC LOSS DOCTRINE.

Plaintiffs' common-law tort claims (negligent misrepresentation, strict products liability – failure to warn, and strict products liability – manufacturing defect) are barred by the economic-loss doctrine. The economic loss doctrine bars product liability tort claims where the only damages suffered are economic losses. *Tiara Condominium Ass'n, Inc. v. Marsh & McLennan Companies, Inc.*, 110 So. 3d 399, 401 (Fla. 2013) (limiting application of the economic loss rule to product liability claims). The economic loss rule provides that where a purchaser's expectations in a sale are frustrated because the product she bought is not working properly, her remedy is in contract alone since she has suffered only economic loss. *Florida Power & Light Co. v. Westinghouse Elec. Corp.*, 510 So. 2d 899, 900-01 (Fla. 1987) (applying economic loss rule to dismiss negligence claim when plaintiff had suffered only economic loss in that the generators purchased from defendant were leaky and inoperable). Plaintiffs may not recover in tort for economic damages unless such damages are accompanied by some form of physical harm (*i.e.*, personal injury or property damage). *Id*. at 901. Thus, in actions arising from the sale or purchase of a defective product, plaintiffs seeking economic losses must be able to demonstrate that either physical damage to property (other than the defective product itself) or personal injury accompanied such losses. If they cannot, then they would be precluded from any tort recovery in strict liability or negligence. *Id*. at 902.

Plaintiffs fail to allege sufficient facts showing they are entitled to non-economic damages for their tort claims to avoid application of the economic loss doctrine. Plaintiffs do not allege that they were or will be physically injured by the Products or that the Products damaged any of their property. Rather, Plaintiffs claim to have been injured because they purchased a "worthless" product. Such claims sound in contract, not in tort, and are barred by the economic loss doctrine. Thus, Plaintiffs' tort claims must be dismissed.

### E.   PLAINTIFFS' EXPRESS WARRANTY CLAIM FAILS BECAUSE DEFENDANTS DID NOT PROMISE WHAT PLAINTIFFS ALLEGE.

Defendants cannot breach an express warranty that the Defendants did not promise to make. To state a claim for breach of express warranty under Florida law, plaintiffs must allege: (1) the sale of goods; (2) the express warranty; (3) breach of the warranty; (4) notice to seller of the breach; and (5) the injuries sustained by the buyer as a result of the breach of the express warranty. *Dunham-Bush, Inc. v. Thermo-Air Serv., Inc*., 351 So. 2d 351, 353 (Fla. Dist. Ct. App. 1977). A defendant cannot breach an express warranty if it did not promise what the plaintiffs allege.  *See Toca*, 430 F. Supp. 3d at 1325 (dismissing breach of express warranty claim premised on lack of particular feature in seller's HVAC units when seller did not create an express warranty that its HVAC units contained that feature or make any such promise to buyer).

Here, Plaintiffs attempt to cherry pick only a portion of the directions on the back of the Products to support their express warranty theory. *See* FAC ¶ 80 ("protective" and "decrease the risk"). In cherry picking fashion, Plaintiffs interpret these partial quotes to mean, "[s]uch statements constitute an affirmation of fact or promise or a description of the product as being safe and not posing a dangerous health risk." *Id*. However, the directions on the back of the Products state, in full:

> Sun Protection Measures. Spending time in the sun increases your risk of skin cancer and early skin aging. To decrease this risk, regularly use a sunscreen with a broad spectrum SPF value of 15 or higher and other sun protection measures including: limit time in the sun, especially from 10 a.m.-2 p.m., wear long-sleeved shirts, pants, hats, and sunglasses.

Tobias Decl. at ¶ 7, Exhibit A.

According to the actual statement, that was the basis of the bargain, Defendants did not make an express warranty that the Products are "safe and not posing a dangerous health risk."  The words "safe," "dangerous," and "health" do not even appear in the section that Plaintiffs allege created the alleged "express warranty." Plaintiffs cannot create their own warranty and then bring a claim against Defendants for breaching an express promise that they clearly did not make. Accordingly, Plaintiffs' claim for express warranty should be dismissed, with prejudice.

### F.   PLAINTIFFS' DEFECT-BASED CLAIMS FAIL BECAUSE PLAINTIFFS HAVE FAILED TO ALLEGE THE PRODUCTS ARE UNREASONABLY DANGEROUS.

Plaintiffs' strict products liability claims for failure to warn and manufacturing defect fail

because Plaintiffs do not allege the Products are "unreasonably dangerous." *West v. Caterpillar Tractor Co*., 336 So. 2d 80, 86-87 (Fla. 1976) ("The user should be protected from unreasonably dangerous products or from a product fraught with unexpected dangers"). Plaintiffs cannot meet this "unreasonably dangerous" standard given that the FDA permits sunscreen to have up to 2 ppm. *See supra* § II. FDA approved, trace amounts of benzene are not "unreasonably dangerous." Thus, Plaintiffs' strict-liability claims must be dismissed.

## CONCLUSION

The Court should dismiss this action. Plaintiffs lack Article III standing because they allege an injury-in-fact that is hypothetical and speculative. Plaintiffs' claims are expressly preempted by the FDCA, which further prohibits private enforcement actions.  Plaintiffs' claims are subject to the primary jurisdiction of the FDA.  Plaintiffs' claims fail to meet the reasonable consumer standard, as a reasonable consumer would not be misled in the manner Plaintiffs allege. Plaintiffs fail to meet Rule 9(b)'s heightened pleading standard, which requires them to plead the alleged misrepresentations with particularity.  Equitable relief is also barred because Plaintiffs fail to allege they lack an adequate remedy at law. The economic loss doctrine bars Plaintiffs' tort claims. Plaintiffs' express warranty claims fail because Defendants did not promise what the Plaintiffs allege. Finally, Plaintiffs' defect claims fail because they do not allege unreasonably dangerous activity.  Any one of the foregoing arguments represents sufficient grounds to dismiss Plaintiffs' FAC with prejudice.  Accordingly, the Court should dismiss this action.

## REQUEST FOR HEARING

Pursuant to Local Rule 7.1(b)(2), Defendants respectfully request a hearing before the Court. Plaintiffs' First Amended Class Action Complaint asserts both multi-state and Florida classes, alleging seven different causes of action over 109 paragraphs. Defendants' grounds for dismissal include, *inter alia*, reliance upon a complex regulatory framework involving preemption and primary jurisdiction. A hearing may provide further clarity of Defendants' grounds for dismissing for what will undoubtedly be costly litigation should the action proceed beyond Defendants' motion to dismiss.

DATED:        August 30, 2021          *By:*    */s/ Irene Oria* _____

**FISHERBROYLES, LLP**

Irene Oria, Fla. Bar No. 484570
irene.oria@fisherbroyles.com
153 East Flagler Street, # 550
Miami, Florida 33131
Telephone:    (786) 873-4603
Facsimile:     (786) 536-2838

**STINSON LLP**

John Moticka, MOSB 31760 (*pro hac vice*)
john.moticka@stinson.com
7700 Forsyth Blvd, Suite 1100,
St. Louis, Missouri 63105
Telephone:    314.259.4562
Facsimile:     314. 259-4467

Megan McCurdy, MOSB 60071 (*pro hac vice*)
megan.mccurdy@stinson.com
1201 Walnut, Suite 2900
Kansas City, Missouri 64106
Telephone:    816.691.2649
Facsimile:     816.412.9733

Ashley Crisafulli, MOSB 71852 (*pro hac vice*)
ashley.crisafulli@stinson.com
1201 Walnut, Suite 2900
Kansas City, Missouri 64106
Telephone:    816.691.2676
Facsimile:     816.412.9733

**ATTORNEYS FOR DEFENDANTS**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 30th day of August, 2021, I electronically filed the foregoing with the Clerk of the Court through the CM/ECF System, which will send a notice of electronic filing to all counsel of record.

/s/ *Irene Oria*
**ATTORNEY FOR DEFENDANTS**